In re Evelyn **GARAFANO**, Debtor.

In re Joseph **GARAFANO**, Debtor.

Joseph **GARAFANO**, Plaintiff,

v.

**TRUSTEES OF the AMALGAMATED INSURANCE FUND**, Defendant.

Bankruptcy Nos. 88–12589S, 88–13964S. Adv. No. 89–0104S.

United States Bankruptcy Court, E.D. Pennsylvania.

May 5, 1989.

David R. Rosenfeld, Philadelphia, Pa., for debtors.

Aris Karalis, Philadelphia, Pa., for trustee. Tali Joan Segal, Philadelphia, Pa., for the Fund.

John Judge, Philadelphia, Pa., trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### INTRODUCTION

The present matter comes before us on the adversarial Complaint of Joseph Gara-

fano to "Determine Validity of Judgment Lien" and upon an objection to a claim of exemption by Evelyn Garafano, his wife. However both matters are resolved by a determination of the Debtors' ability to collaterally attack the validity of a judgment entered against Joseph Garafano by the United States District Court for the Eastern District of Pennsylvania.

The Debtors in the present matter ask that we redetermine the liability of Joseph Garafano which was previously established by a default judgment entered by the district court against Joseph Garafano. Resolution of this issue requires us to consider the authority of this court to redetermine the liabilities of debtors in light of the policies supporting the finality of judgments. For the reasons discussed below, we conclude that the prior district court default judgment is res judicata vis-a-vis the present controversies between the parties.

PROCEDURAL HISTORY

On July 22, 1988, Evelyn Mae Garafano (hereinafter "Evelyn") filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code on behalf of herself doing business as South Philadelphia Vest (hereinafter "the Company"). Evelyn subsequently filed her Schedules and Statement of Financial Affairs on August 8, 1988. The only creditor listed on these Schedules was the Trustees of the Amalgamated Insurance Fund (hereinafter "the Fund"). The Fund's claim was initially scheduled as $153,000.00 for "withdrawal liability" under 29 U.S.C. § 1381, *et seq.*, of the Employee Retirement Income Security Act (hereinafter "ERISA"), arising out of termination of the Company's business operations in May, 1984. This claim is listed as disputed. Schedule B–4 claims substantially all of Evelyn's scheduled property exempt as jointly-owned property pursuant to 11 U.S.C. § 522(b)(2)(B) and 42 Pa.C.S.A. § 8123.[1]

On September 26, 1988, the Fund filed a Proof of Claim against Evelyn in the amount of $138,491.64 for ERISA withdrawal liability, interest, liquidated damages, costs, and attorneys fees. No Objection has been filed to this Proof of Claim to date. On October 6, 1988, the Fund filed an Objection to Evelyn's claim of exemption with respect to the residence, bank accounts, and motor vehicle. This Objection was originally scheduled for a hearing on November 10, 1988, and, after two continuances, was ultimately held on February 21, 1989.

On February 16, 1989, Evelyn filed Amended Schedules and Statement of Affairs. Again, the only creditor listed in these Amended Schedules was the Fund, although the amount of the claim was reduced to $97,957.20. Similarly, Evelyn's Amended Schedule B–4 claims substantially all of Evelyn's scheduled property as exempt because it was allegedly jointly owned with her husband, Joseph Garafano (hereinafter "Joseph") (Joseph and Evelyn shall be jointly referred to as "the Debtors").[2]

On November 10, 1988, the Fund filed an Involuntary Petition for relief against Joseph, doing business as the Company. Joseph's initial opposition to this Petition was

---

1. The property claimed as exempt in Evelyn's original schedule included the following:

| | |
|---|---|
| Debtor's Residence | $ 35,000.00 |
| Bank Accts. | 79,596.25 |
| Wearing Apparel | 300.00 |
| Household Furnishing | 300.00 |
| Motor Vehicle | 1,000.00 |
| Individual Retirement Funds | 20,632.12 |
| TOTAL | $136,828.62 |

2. After the Briefs in the present matter were filed, counsel for the Fund submitted a pleading entitled "Creditor Trustees of the Amalgamated Insurance Fund's Memorandum of Law Regarding Objections to Exemptions Claimed by Debt-

or Evelyn Garafano Pursuant to Her Amended Schedules and Claimed by Joseph Garafano Pursuant To His Schedules." This pleading appears to raise new objections to Evelyn's Amended Schedules and to Joseph's claim of Exemptions based upon new information contained in these most recent schedules. Since these objections raise new matters we have scheduled them for a separate hearing on May 11, 1989. To the extent that this submission addresses issues covered in the original briefing schedule it has not been considered. *See In re Jungkurth,* 74 B.R. 323, 326 (Bankr.E.D.Pa.1988) (unsolicited submission not originally contemplated by briefing order not favored by the court).

eventually withdrawn, and an Order for Relief was entered on January 6, 1989. By this same Order, Joseph's Motion for Joint Administration with Evelyn's case was granted.

John P. Judge has been appointed as Trustee for both of the Debtors. A Meeting of Creditors was originally scheduled in Evelyn's case for September 6, 1988. The Meeting of Creditors was subsequently scheduled and continued on three occasions thereafter. At present the 341 Meeting in Evelyn's case has yet to be held or rescheduled. The 341 Meeting in Joseph's case has not been scheduled. We shall include in our Order accompanying this Opinion directives that the Creditors' Meetings be scheduled in both these cases in order to expedite administration of these cases.

On February 16, 1989, Joseph filed, as an adversary proceeding, a Complaint To Determine the Validity of Judgment Lien, seeking a declaration by this Court that the lien of a judgment obtained by the Fund against Joseph in District Court is invalid and disallowing the claim of the Fund against Joseph's estate. While this matter had not yet been scheduled for hearing on February 21, 1989, the parties agreed, when they appeared on that date, that the ability of the Debtor to challenge the District Court judgment should be addressed in conjunction with the Fund's Objection to Evelyn's claim of exemptions. The Trustee also appeared by counsel. He supported the Fund's Objection to the claim of exemptions, but indicated a willingness to allow the Fund to take the laboring oar.

After a colloquy with counsel at the hearing held on February 21, 1989, four transcripts of depositions taken in this matter were admitted by agreement together with documents submitted in conjunction with these depositions.[3] A fifth deposition was proffered for admission by the Fund, but was objected to by Joseph. This was a deposition of Joseph taken on October 21, 1987, in connection with the District Court case. The Court reserved ruling on the admissibility of this deposition.

The parties agreed, in a colloquy with the court on February 21, 1989, that the initial issue to be decided, with respect to both the adversarial matter and the Objection to claim of exemptions, was whether the judgment previously entered by the district court would be res judicata with respect to the Fund's claim against Joseph in this court.[4] The parties agreed to submit briefs on, *inter alia*, this legal issue to be considered by the court as a Motion for Summary Judgment or to Dismiss the adversarial Complaint. The only evidence presented at the hearing was the abovementioned depositions. These depositions relate almost exclusively to assets held by the Debtors, and are not really relevant to the issues that we address here. As a result we shall not consider these depositions in our decisionmaking process here, but shall limit ourselves to the factual allegations contained in the pleadings.

■ Since this matter was submitted to the Court for consideration on the basis of a limited record, we shall proceed to consider the matter as one to dismiss Joseph's adversarial Complaint for failure to state a cause of action pursuant to Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6). *Compare In re Amatex, Amatex Corp. v. Aetna Casualty & Surety Co.*, 97 B.R. 220, 223 (Bankr.E.D.Pa. 1989) (case decided as if presented on a motion for summary judgment since the court considered matters presented by the parties outside of the pleadings). Since the depositions are not relevant to the issues to be addressed here, we believe that the present matter, unlike the *Amatex* case, may be decided as if on a motion to dismiss rather than as if presented on a motion for summary judgment. In deciding such a motion, we must assume that all of the facts alleged in Joseph's Complaint are

---

3. These depositions include:
   Deposition of Elizabeth Milavsky taken January 19, 1989
   Deposition of Thomas J. Ralston taken February 9, 1989
   Deposition of Evelyn taken January 19, 1989

Deposition of Joseph taken January 19, 1989

4. The Trustee, at that hearing, joined the Fund in their objection to Evelyn's claim of Exemptions.

true. *See e.g., Commonwealth of PA. ex rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 175, 181, 184 (3d Cir.1988); and *In re Tucci,* 81 B.R. 320, 320–21 (Bankr.E.D.Pa. 1988).

By Order dated February 22, 1989, in light of the colloquy on February 21, 1989, the parties were given an opportunity to simultaneously file briefs addressing the following issues:

1. Should the October 21, 1987, Deposition of the husband-Debtor in C.A. No. 5907 [sic] (E.D.Pa.) be admissible into the record of the disposition of this matter? *See* Bankr.Rule 7032, F.R.Civ.P. 32(a)(2).[5]

2. May the husband-Debtor attack the judgment entered against him in C.A. No. 85–5907 (E.D.Pa.) in the above adversary proceeding, or is he bound by that judgment in the administration of these cases? *See In re Gulph Woods Corp.,* 84 B.R. 961, 970 (Bankr.E.D.Pa.1988), and cases cited therein.

3. Is an evidentiary hearing necessary on any issues prior to disposition on its merits? If so, on what issues and when should this be conducted?

4. The merits of the Fund's motion (presumably the same objections would be equally applicable to each of the Debtor's cases; indicate if this is not so).

The parties' Briefs were filed timely and this matter is ripe for adjudication.[6] Since these consolidated matters involve a challenge to a claim of exemption and a Complaint for the determination of a judicial lien, they are core matters which may be determined by this Court. 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(2)(K).

## FACTUAL ALLEGATIONS

As discussed *supra,* the only evidence presented in these matters was the depositions admitted by agreement of counsel. However, these depositions are not rele-

vant to the issues to be decided and are not considered here. Accordingly, we shall limit our consideration to the factual allegations contained in the adversarial Complaint.

The pertinent allegations are as follows:

1. The Fund is the sole creditor of Joseph.

2. On or about July 4, 1986, the Fund obtained a default judgment against Joseph in the matter of *Trustees of the Amalgamated Insurance Fund v. Joseph Garafano t/a South Philadelphia Vest,* United States District Court for the Eastern District of Pennsylvania, Civil Action No. 85–5907.

3. The Complaint in the aforesaid civil action alleged that the Fund was the sponsor of a multiple-employee benefit retirement plan (hereinafter "the plan") within the meaning of the ERISA, 29 U.S.C. § 1001 *et seq.,* as amended by the MultiEmployer Pension Plan Amendments Act, 29 U.S.C. § 1381 *et seq.* (hereinafter "the MPPAA"). The Complaint further alleged that the Company permanently ceased operations on December 31, 1983, and withdrew from the plan. Also according to the Complaint, such action subjected the Company to "withdrawal liability" under ERISA, which the Fund calculated to be $85,817.28. That Complaint alleged that Joseph Garafano, t/a South Philadelphia Vest, is an individual proprietorship.

4. Joseph maintains that the Company was a sole proprietorship operated solely by Evelyn and that he was merely an employee of the Company. As such, he denies that he would have any responsibility for the Company's ERISA withdrawal liability.

5. The instant adversary Complaint alleges that the Fund knew or should have known that Joseph was not liable for the Company's ERISA withdrawal liability.

---

**5.** In light of our holding that the prior district court judgment is controlling here, on the basis of the allegations contained in the pleadings, we need not and do not reach this issue.

**6.** After the Briefs were submitted in the matter counsel exchanged a volley of indignant correspondence. Counsel for the Fund objected to the fact that counsel for Joseph had attached to

and made reference to certain documents in his brief that had not been admitted into evidence. Suffice it to say that evidence not admitted into evidence, and matters not contained in the pleadings will not be relied upon by the Court. We also note that counsel for both parties made reference to matters outside the record in their Briefs.

6. Joseph did not appear in the District Court action either pro se or through counsel or otherwise to defend in that action.

7. The adversarial Complaint alleges that Joseph is an elderly man who did not fully comprehend the consequences of his failure to defend in the District Court matter.

DISCUSSION

1. JOSEPH GARAFANO MAY NOT CHALLENGE THE VALIDITY OF THE JUDGMENT ENTERED AGAINST HIM IN THE DISTRICT COURT ACTION IN PROCEEDING IN THIS COURT

While entitled a "Complaint to Determine the Validity of Judgment Lien," it is clear that Joseph is challenging, through his adversarial Complaint, the validity of the district court judgment itself rather than the existence or extent of any lien resulting therefrom. The Debtors argue that this bankruptcy court, through its equitable powers, has the authority to review a prebankruptcy federal default judgment. The Debtors urge the court to exercise that power here to allow Joseph to challenge the Fund's claim against him and to raise defenses to the Fund's claim that he failed to assert in the district court action. In contrast to the Debtors' position, the Fund maintains that the prior district court judgment is res judicata here, and that this court lacks jurisdiction to invalidate or reopen that judgment. Alternately, the Fund argues that the Debtor should be estopped from challenging the judgment since he failed to do so for a period of over two and a half years.

■■■ Where a valid judgment is rendered by a court of competent jurisdiction, res judicata, also known as claims preclusion, prevents a party from asserting a claim or defense which could have been asserted in the first action in any subsequent proceeding. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Gregory v. Chehi*, 843 F.2d 111, 115–16 (3d Cir.1988); *First Alabama Bank v. Parsons Steel, Inc.*, 747 F.2d 1367 (11th Cir.1984); and 1B J. MOORE, FEDERAL PRACTICE, ¶ .405[1], at 178–179 (2d ed. 1988); RESTATEMENT (SECOND) OF JUDGMENTS, § 18 at 151 (1982). The policies supporting the finality of judgments include "relieving parties of the costs of vexation of multiple lawsuits, conserving judicial resources, preventing inconsistent decisions, and encouraging reliance on adjudications." Annot., *Supreme Court Views as to Res Judicata or Collateral Estoppel Effect of State Court Judgments on Federal Courts*, 72 L.Ed.2d 911, 914 (1983). *See Chehi*, 843 F.2d at 116 (res judicata and collateral estoppel share common goals of judicial economy, predictability, and freedom of litigants from of harassment).[7] Absent some showing of fraud, res judicata applies to a judgment obtained by default as well as to one entered after trial. *Morris v. Jones*, 329 U.S. 545, 550–51, 67 S.Ct. 451, 455–56, 91 L.Ed. 488 (1947); *Riehle v. Margolies*, 279 U.S. 218, 225, 49 S.Ct. 310, 313, 73 L.Ed. 669 (1929); *Kelleran, supra*, 825 F.2d at 694–95; and *In re Bystrek*, 17 B.R. 894, 896 (Bankr.E.D. Pa.1982). *See also* RESTATEMENT (SECOND) OF JUDGMENTS, *supra*, § 18 at 152; and *A–1, supra*, 33 B.R. at 284. Thus, res judicata will bar relitigation of a claim or defense regardless of whether such claim or defense was raised previously, so long as the debtor was afforded a fair opportunity to do so. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Jaffe v. Grant*, 793 F.2d 1182, 1188 (11th Cir.1986), *cert. denied*, 480 U.S. 931, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987); and *Kapp v. Naturelle, Inc.*, 611 F.2d 703 (8th Cir.1965). As noted in the RESTATEMENT (SECOND) OF JUDGMENTS, *supra*, § 70, at 180, a party may not avoid the preclusive effect of a judgment "simply because the losing party

---

7. Unlike most of the cases cited by the parties, the issue of full faith and credit is not implicated here, since the prior judgment was entered by the United States District court rather than a state court. *Compare Migra v. Warren City*, 465 U.S. 75, 84, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984); *Chehi*, 843 F.2d at 116; *Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); and *In re A–1 24 Hour Towing, Inc.*, 33 B.R. 281, 283–84 (D.Nev.1983).

neglected to take best advantage of his day in court or that additional evidence or argument would produce a different outcome."

■ The policies supporting the finality of judgments are equally applicable to bankruptcy courts, and parties will not generally be accorded an opportunity to re-litigate a claim previously determined by a court of competent jurisdiction. *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946); *Kelleran, supra*, 825 F.2d 692 at 695. *Accord In re Bailey*, Bankr. No. 86–01483F, slip op. at 7 (Bankr. E.D.Pa. April 26, 1989). However, we believe the Fund overstates these principles when it suggests that this court lacks jurisdiction to question the validity of a pre-bankruptcy judgment.

■ The policies supporting application of res judicata must be weighed against countervailing policies expressed in the Bankruptcy Code. Bankruptcy courts are courts of equity. *Heiser, supra*, 327 U.S. at 732, 66 S.Ct. at 856; *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); and *Margolis v. Nazareth Fair Grounds & Farmers Market*, 249 F.2d 221, 223 (2d Cir.1957). As such, the bankruptcy court is empowered to disallow claims, 11 U.S.C. § 502; to subordinate claims, 11 U.S.C. § 747; and to avoid preferential and fraudulent transfers, 11 U.S.C. §§ 547, 548. *See In re Mason*, 69 B.R. 876 (Bankr.E.D.Pa.1987); and *In re Pinto*, 89 B.R. 486 (Bankr.E.D.Pa.1988). These powers are granted to this court by Congress, which has plenary power over the regulation of bankruptcies. U.S. Const., Art. 1, § 8, cl. 4. *See Kalb v. Feuerstein*, 308 U.S. 433, 436, 60 S.Ct. 343, 344, 84 L.Ed. 370 (1940). *Compare Brown*, 442 U.S. at 136, 99 S.Ct. at 2212 (Congress could grant bankruptcy court exclusive jurisdiction over dischargeability issues).[8] Congress expressly granted the bankruptcy court with the power to determine the amount of any claim to which there is an objection. 11 U.S.C. § 502(b).[9] The equitable powers of the bankruptcy court can and should be exercised to avoid collusion and fraud. *Margolis*, 249 F.2d at 224.

The Supreme Court, in *Pepper v. Litton*, upheld the decision of the district court disallowing the salary claim of the controlling stockholder of the debtor-corporation. The *Pepper* court refused to allow the claim even though it was based on a state court judgment where that judgment was obtained as a result of a "planned and fraudulent scheme." 308 U.S. at 312, 60 S.Ct. at 248. In so holding, the Court noted that the bankruptcy court, "in the exercise of its equitable jurisdiction ... has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." 308 U.S. at 307–08, 60 S.Ct. at 245–46. *Accord, In re Century Vault Company*, 416 F.2d 1035, 1039–40 (3d Cir.1969).

■ The principles expressed in *Pepper* have been further refined and delineated by later cases.[10] A review of these cases reveals that the bankruptcy court does have the power to inquire into the validity of a claim based upon a pre-petition judgment. *Pepper*, 308 U.S. at 302, 60 S.Ct. at 243; *Margolis*, 249 F.2d at 223; *Farrell, supra*, 27 B.R. at 245; and *In re Lockwood*, 14 B.R. 374, 378 (Bankr.E.D.N.Y. 1981). Thus, the bankruptcy court is not bound by a prior judgment which is rendered by a court lacking proper jurisdiction over the parties or subject matter, or where the judgment was obtained by collu-

---

8. The Supreme Court in *Brown* thus cautioned against the mechanical application of res judicata.

Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and cheat as well as the honest person. It therefore is to be invoked only after careful inquiry.

442 U.S. at 132, 99 S.Ct. at 2210.

9. The Code expressly provides that a claim shall not be approved to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for any reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

10. *See In re Farrell*, 27 B.R. 241 (E.D.N.Y.1982), for a thorough review of the relevant precedent.

sion or fraud. *See Heiser*, 327 U.S. at 736, 66 S.Ct. at 858; and *Kelleran*, 825 F.2d at 694. *See also In re Sharp*, 24 B.R. 817, 818–19 (Bankr.E.D.Pa.1982) (bankruptcy court may determine validity of sheriff's sale in determining whether property was included in bankruptcy estate). *But see Heiser*, 327 U.S. at 740, 66 S.Ct. at 860 (bankruptcy court is bound by prior decision addressing allegations of fraud in obtaining prior judgment); and *Amatex, supra*, 97 B.R. at 225–26 (equitable powers of bankruptcy courts must be exercised within the contours of the Bankruptcy Code and other applicable law).

The Debtors here do not question the jurisdiction of the district court to enter the 1986 judgment. However, they do argue that the judgment was obtained as a result of fraud and, as such, is subject to collateral attack.

The Fund maintains that, when the Company ceased operation in December, 1983, it withdrew from the Fund's retirement plan and was subject to "withdrawal liability" under ERISA, as amended by MPPAA. 29 U.S.C. § 1381.[11] As we explained in *T.D.M.A., supra*, 66 B.R. at 993:

> The MPPAA requires that an employer withdrawing from a multi-employer pension plan pay a fixed sum to the pension plan. This "withdrawal liability" is the employer's proportionate share of the plan's "unfunded vested benefits," calculated as the difference between the present value of vested benefits and the current value of the plan's assets.

The MPPAA provides that the "employer" is liable for withdrawal liability. 29 U.S.C. § 1381(a). Joseph maintains that he was merely an employee of the Company and, as such, he incurred no personal liability with respect to the Company's ERISA withdrawal liability.

The Debtors allege that the Fund did not have a valid claim against Joseph and that it knew that it had no valid claim against Joseph. The Debtors argue that the filing of the district court action against Joseph, in light of this knowledge, constituted fraud.

The courts have not clearly articulated the character and quantum of fraud that will entitle a debtor to collaterally attack a pre-petition judgment. However, the fraudulent conduct involved in the reported cases has consistently been of a more serious nature than what is alleged here.

In *Pepper*, a principal of the debtor corporation engaged in an elaborate scheme of legal maneuvering in order to obtain a money judgment against the debtor and to insure that his judgment would be accorded priority vis-a-vis other creditors of the corporation. 308 U.S. at 296, 302, 60 S.Ct. at 240, 243. In *Heiser*, the court indicated that the bankruptcy court may set aside fraudulent judgments where the issue of fraud had not been previously adjudicated, but failed to define the type of fraud that would warrant such action. 327 U.S. at 732, 66 S.Ct. at 856. In *Margolis*, the Second Circuit Court of Appeals upheld the disallowance of a claim based on a confessed judgment where it was found that the judgment creditor was dominating the affairs of the debtor and that the debtor was prevented by fraud from raising a valid defense. 249 F.2d at 224–25. In *Browning v. Navarro*, 826 F.2d 335, 344–45 (5th Cir.1987), the Fifth Circuit Court of Appeals held that allegations of collusion and corrupt use of the judicial process could serve as a basis to collaterally attack a pre-petition state court judgment. *But see Kelleran, supra*, 825 F.2d at 694–95 (prior attorney-client relationship between the debtor and his business partner did not excuse the debtor's default where his part-

---

**11.** As we noted in *In re T.D.M.A., Inc.*, 66 B.R. 992, 993 (Bankr.E.D.Pa.1986), these provisions of ERISA and MPPAA were intended to "insure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans ..." *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361–62, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980). The constitutionality constitutionality of the withdrawal obligations imposed by ERISA and MPPAA was upheld in *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984).

ner's actions did not contribute to the default).

What the Debtors assert here is not fraud, but is in fact a substantive defense, *i.e.,* that Joseph is not personally liable on the debt. If Joseph believed he had no responsibility for the Company's withdrawal liability, he was free to defend the action in the district court on that basis. Unlike the above cases, there apparently was nothing about the judicial proceedings or the relationship between the parties which prevented Joseph from asserting his defense in that action. He cannot now escape the consequences of his own inaction.

The Debtors argue that they may also collaterally attack a judgment where it is "not founded on any legally enforceable obligation." *Pepper,* 308 U.S. at 306, 60 S.Ct. at 245; and *Margolis,* 249 F.2d at 224. However, in both *Pepper* and *Margolis,* apart from the merits of the judgment-creditors claim, the Debtors had, for differing reasons, been prevented from asserting their defenses. In contrast, the Second Circuit in *Kelleran* refused a collateral attack on a judgment despite the fact that "the record strongly suggests that the merits of ... [the judgment creditor's] claims are doubtful." 825 F.2d at 695.

▆ We are inclined to agree with the *Kelleran* court that default judgments should be subject to a closer scrutiny than those that result from litigation. 825 F.2d at 699. This is particularly true where, as here, the Debtors allege the existence of a substantive defense to the underlying claim. However, we are not inclined to look beyond a pre-petition judgment absent some allegation of fraud or defect in proceedings which eviscerated the Debtors' ability to present that defense.

▆ Thus, in addition to possessing a defense to a judgment, the Debtors must establish some reason why that defense was not presented in the prior proceeding to successfully attack the district court judgment. Allowance of a collateral attack

simply because of the existence of a substantive defense that was not previously asserted would obliterate the policies of res judicata. The only justification advanced for Joseph's inaction was that he did not appreciate the significance of the action brought against him. These allegations do not establish sufficient "fraud or other circumstances" that would allow this court to disregard the judgment entered against him by the district court.[12]

Therefore, we do not read *Pepper* and *Margolis* so broadly that we would allow a collateral attack on a pre-petition judgment based solely on the suggestion that the judgment-creditor's claim lacked merit. Such a position is not supported by the caselaw. In addition, such a position would raise every substantive defense that a party failed to assert to the level of "fraud." Thus, a debtor could seek, through bankruptcy, to collaterally attack any judgment that he or she thought "lacked merit." Allowance of such collateral attacks on pre-petition judgments would seriously undermine the policies served by the doctrine of res judicata. We see no reason why a default judgment should be treated differently in this regard.

The most factually analogous cases to the present case cited by the parties are *Kapp, supra;* and *Lockwood, supra.* In *Kapp,* the bankruptcy judge had disallowed thirteen claims based on pre-petition judgments entered against an individual debtor. The bankruptcy judge had concluded that these thirteen claims were in fact corporate obligations and that the debtor had incurred no personal liability for these debts. However, the Eighth Circuit Court of Appeals reversed, holding that the prior state court judgments were binding on the debtor absent some allegation of fraud. 611 F.2d at 710. In so holding, the court noted that, under the applicable state law, an individual may be held personally liable for corporate debts in a variety of circumstances. *Id.* at 709–10. *Compare*

---

12. The Debtors here do not suggest that Joseph did not receive adequate notice of the District Court action. *Compare Main Line Federal Savings & Loan Assoc. v. Joyce,* 632 F.Supp. 9 (E.D. Pa.1986) (proper notice under 41 P.S. § 403 is a jurisdictional prerequisite to a foreclosure action).

*In re Fleet,* 95 B.R. 319, 338–339 (Bankr.E. D.Pa.1989) (individual closely connected with company's operations may be liable for company's violation of state under trade practices law).

In *Lockwood,* the debtors also claimed that they were not liable for corporate debts. However, the court in *Lockwood* allowed a collateral attack on a pre-petition judgment which had been entered as a sanction for failure to comply with discovery orders in a state court proceeding. 14 B.R. at 376. The *Lockwood* debtors, however, had retained an attorney, turned over their papers to that attorney, and that attorney told them on several occasions that he would take care of the matter. *Id.* at 377, 379. Thus, the *Lockwood* court concluded that the attorney's incompetence in failing to attend to their case, deprived the debtors of a "full and fair" opportunity to litigate their defenses. *Id.* at 379–380. No similar barrier existed for Joseph in the district court case in which judgment was entered against him.[13]

We note that we are far less inclined to allow a collateral attack on a pre-petition judgment when, as in the present case, the judgment has been entered by the district court of this very district. The cases cited by the Debtors here involved judgments entered by the state courts. *See Kelleran, supra,* 825 F.2d at 694; *Kapp, supra,* 611 F.2d at 706; *Margolis, supra,* 249 F.2d at 222; *A–1, supra,* 33 B.R. at 282; and *Lockwood, supra,* 14 B.R. at 376. It must be recalled that it is the district court that has, in the first instance, jurisdiction over all bankruptcy cases which are, in turn, referred to the bankruptcy judges for that district. 28 U.S.C. §§ 1334(a), 157(a).

Thus, we are faced here with a prior decision issued by a court of the superior branch of our own forum. We question whether this court, as an inferior branch of the court, ever could have the authority to effectively overrule a judgment of its own district court. *Compare Teachers Ins. & Annuity Ass'n of America v. Butler,* 803 F.2d 61, 66 (2d Cir.1986) (relitigation of prior district court judgment would circumvent procedures for appeal of district court decisions to the Court of Appeals); and *In re Telephonics,* 85 B.R. 312, 318 (Bankr.E. D.Pa.1988) (bankruptcy court defers to power of court that entered a judgment, which should generally retain control over its own judgment).

There are other instances where the preclusive effect accorded prior judgments must give way to other significant legislative or judicial policies. RESTATEMENT (SECOND) OF JUDGMENTS, *supra,* § 26 at 242. *See Chehi, supra,* 843 F.2d at 119–21 (res judicata not applicable to claims not inextricably tied to matter previously litigated or to persons not party to prior proceeding).[14] Thus this court has refused to enforce a state-court confessed judgment that was unconstitutionally obtained in violation of a debtor's federal due process rights. *In re Souders,* 75 B.R. 427, 433–38 (Bankr.E.D.Pa.1987). We have also opened judgments of other courts in actions which have been removed to this court. *In re Miller,* 90 B.R. 762, 763 (Bankr.E.D.Pa.1988). *Compare Telephonics, supra,* 85 B.R. at 318 n. 3.

In summary, we believe that the doctrine of res judicata should not be rigidly applied and must be balanced against the equitable

---

**13.** In discussing the competing interests to be accommodated in applying the doctrine of res judicata, the *Lockwood* court, 14 B.R. at 379 n 7, cited to Judge Learned Hand's following comment:

> "[The doctrine of res judicata] must be watched in its application lest a blind adherence to it tend to defeat the even firmer established policy of giving every litigant a full and fair day in court." In short, it appears to us that the doctrine, like so many others in the law, must be treated as a compromise between two conflicting interests: the convenience of avoiding a multiplicity of suits and

the adequacy of the remedies afforded for conceded wrongs.
>
> *Lyons v. Westinghouse Electric Corporation,* 222 F.2d 184, 189 (2d Cir.1955), *cert denied,* 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (quoting *United States v. Silliman,* 167 F.2d 607, 614 (3d Cir. 1948)).

**14.** Of course, res judicata is limited in its application to final judgment on the merits, where the prior action was between the same parties or those in privity to them, involved the same cause of action and was judicial in nature. Annot., *supra,* 72 L.Ed. at 929–49.

interests of the Debtor and of other creditors in the bankruptcy. Res judicata does not prevent this court from inquiring into the validity of a pre-petition judgment. However, the Debtor here has failed to assert sufficient grounds to allow a collateral attack on the district court judgment. In addition, Joseph has had ample opportunity to present a motion for relief from the district court judgment to that court pursuant to F.R.Civ.P. 60(b). However, as far as we know, he has failed to avail himself of this opportunity.[15]

### 2. EVELYN GARAFANO IS NOT ENTITLED TO THE EXEMPTIONS CLAIMED BY HER UNDER 11 U.S.C. § 522(b)(2)(B) AS TO THE FUND IN LIGHT OF THE FACT THAT THE DEBT TO THE FUND IS A JOINT OBLIGATION

■ Despite the directive contained in our briefing Order, except for a short passage at the end of the Fund's brief, neither of the parties' Briefs addresses the merits of the Fund's Objection to Evelyn's claim of exemptions. However, this may be because resolution of this objection is simple once it has been determined that the prior district court judgment is binding here.

As noted previously, Evelyn claimed substantially all of her scheduled property as exempt in her Schedule B-4. *See* page 3 n. 1 *supra.* As the basis for her claim of exemption, Evelyn cites to 11 U.S.C. § 522(b)(2)(B) and 42 Pa.C.S.A. § 8123.[16] The Code provides that a debtor may exempt from property of the estate

> an interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt

from process under applicable non-bankruptcy law.

11 U.S.C. § 522(b)(2)(B).

The applicable non-bankruptcy law is the Pennsylvania common law relating to tenancies by the entirety. *Napotnik v. Equibank–Parkvale Savings Ass'n,* 679 F.2d 316, 319 (3d Cir.1982). *See also In re Hope,* 77 B.R. 470 (Bankr.E.D.Pa.1987). Property held by husband and wife in Pennsylvania is presumptively held as tenants by the entireties, *Shapiro v. Shapiro,* 424 Pa. 120, 136, 224 A.2d 164, 172 (1966). The essential characteristic of such ownership is that each tenant is seized of the whole estate with a right of survivorship. *Beihl v. Martin,* 236 Pa. 519, 522–23, 84 A. 953, 954 (1912); *Daley v. Hornbake,* 325 Pa.Super. 172, 176, 472 A.2d 703, 705 (1984); and *Kossman v. Commonwealth Dep't of Public Welfare,* 69 Pa.Cmwlth 17, 23, 450 A.2d 239, 242 (1982). Neither spouse can partition or convey an interest held by the entireties without joinder of the other, *Daley, supra,* 325 Pa.Super. at 176, 472 A.2d at 705, *Shapiro, supra,* 424 Pa. at 136, 224 A.2d at 173, and the rights of creditors of only one such tenant cannot affect property held by the entireties. *Amadon v. Amadon,* 359 Pa. 434, 439, 59 A.2d 135, 137 (1948); *Murphey v. C.I.T. Corp.,* 347 Pa. 591, 594, 33 A.2d 16, 18 (1943); *C.I.T. Corp. v. Flint,* 333 Pa. 350, 355, 5 A.2d 126, 129 (1939). Thus, property held by the entireties is generally exempt from execution by the creditor of one tenant and hence exempt under § 522(b)(2)(B). *Compare Wylie v. Zimmer,* 98 F.Supp. 298, 308 (E.D.Pa.1951) (debtor's interest in entireties property is not part of the debtor's bankruptcy estate under the prior Bankruptcy Act).

However, in Pennsylvania entireties property may be reached by the joint creditors of a husband and wife. *Napotnik, supra,* 679 F.2d at 320; *In re Beitman,* 25

---

**15.** In the colloquy with counsel on February 21, 1989, we strongly suggested to the Debtors' counsel that he proceed in this fashion. Counsel stated that he would. However, the Joseph has nevertheless apparently not done so.

**16.** 42 Pa. C.S. § 8123, Pennsylvania's general monetary exemption statute, does not appear relevant to the present controversy. Indeed, Evelyn makes no reference to same in her Answer to the Fund's Objections, referring instead to 11 U.S.C. § 522(b)(2)(B) and the "applicable non-bankruptcy law" of Pennsylvania.

B.R. 303, 305 (M.D.Pa.1982); and *Arch Street Bldg. & Loan Ass'n. v. Sook,* 104 Pa.Super. 269, 274, 158 A. 595, 596 (1932). Thus, the Court of Appeals concluded in *Napotnik* that a debtor's interest in entireties property that was subject to a judgment against both the debtor and his spouse on a joint debt and could not be exempt under § 522(b)(2)(B). 679 F.2d at 320. *Accord, Sumy v. Schlossberg,* 777 F.2d 921, 925 (4th Cir.1985) (a judgment against both spouses based on a joint obligation may be satisfied by execution upon property held by the entireties under Maryland law); *In re Grosslight,* 757 F.2d 773, 776 (6th Cir.1985) (same result under Michigan law). *See also In re Panas,* 68 B.R. 421, 425–46 (E.D.Pa.1986) (secured creditor of both tenants by the entireties has a secured claim to extent of the entire value of property under 11 U.S.C. § 506(a); and *In re Jablonski,* 70 B.R. 381, 387 (E.D.Pa. 1987), *aff'd,* 88 B.R. 652 (E.D.Pa.1988) (same).

In the present case, the Fund clearly appears to be a joint creditor of both Debtors. It had previously obtained a judgment against Joseph in the district court action against which we decline to permit an attack in this court. *See* pages 10–23 *supra.* In addition, the Fund has filed a proof of claim against Evelyn, and she has listed the Fund as a creditor on her Schedules.[17] While Evelyn has listed the Fund's claim as disputed on her Schedules, no Objection has been filed to the Fund's proof of claim. Absent such an Objection, this claim will be deemed allowed. 11 U.S.C. § 502(a). Indeed, the Debtors argue here that, to the extent either of them is liable for the ERISA withdrawal liability, such liability is solely *Evelyn's* responsibility.

In light of this judgment entered against Joseph and the apparently undisputed proof of claim filed against Evelyn arising out of the same liability, the withdrawal liability claim must be found to be a joint obligation of both Debtors. The entireties property of the Debtors is then subject to

this claim of the Fund and cannot be exempt under § 522(b)(2)(B) as to the Fund.

CONCLUSION

We hold that the Fund is entitled to judgment in the adversary proceeding solely on the basis of the pleadings. As a direct result thereof, the Objections to Evelyn's claim of exemptions must be sustained. In light of the results here, we see no need to schedule an evidentiary hearing in the adversary proceedings.

An appropriate Order will be issued.

---

**17.** While the Fund, in its Brief, made reference to a district court action filed against Evelyn relating to the ERISA withdrawal liability, it appears that liability was not established in this action before Evelyn filed her bankruptcy petition.