In re Barbara A. JOHNSON, Debtor.

Barbara A. JOHNSON

and

Edward Sparkman, Standing Chapter 13 Trustee, Plaintiffs,

v.

LOMAS MORTGAGE USA, INC., Defendant.

Bankruptcy No. 91–14106S.

Adv. No. 92–0135S.

United States Bankruptcy Court, E.D. Pennsylvania.

May 29, 1992.

tacks a secured proof of claim filed by LOMAS MORTGAGE USA, INC. ("Lomas"), in the total amount of $22,485.92, presents, principally, certain issues regarding the conclusiveness of a pre-petition state court foreclosure judgment of June 20, 1991, obtained against the Debtor by Lomas in the amount of $13,309.05.

We hold that, since the state court entered judgment in the amount of $13,309.05 only after protracted litigation over the amount of the judgment, it would be inappropriate for this court to question or reassess that sum. Thus, post-petition interest at six (6%) percent per annum from the date of judgment through the projected date of confirmation, of July 7, 1992, amounting to $833.59, is the only interest which we hold can be added to the claim òf Lomas. However, we also conclude that reasonable, post-petition expenditures of Lomas for taxes and insurance on the secured premises in the amount of $947.73 can be added to the amount of the claim.

Finally, we hold that the Debtor cannot prosecute a recoupment claim, under the federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* ("the TILA"), on behalf of her non-debtor, late husband because she did not sue in a representative capacity and did not allege that she has been appointed as his personal representative. Therefore, she may reduce the claim by only her individual $1,000 recoupment claim. Consequently, we fix Lomas' secured claim at $14,090.37.

Susan L. DeJarnatt, Philadelphia, Pa., for debtor.

Edward Sparkman, Philadelphia, Pa., plaintiff-trustee.

Gary McCafferty, Philadelphia, Pa., for defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. Introduction

The instant proceeding, in which BARBARA A. JOHNSON ("the Debtor") at-

### B. Procedural and Factual History

The Debtor filed the underlying Chapter 13 bankruptcy case on July 30, 1991. The Plan filed with the initial papers required the Debtor to submit payments of $272.27 to Plaintiff EDWARD SPARKMAN, the Standing Chapter 13 Trustee ("the Trustee"), for 60 months, which it was contemplated would be sufficient to pay Lomas' total secured claim through the plan. Inexplicably, no meeting of creditors or confirmation was scheduled in this case within the period within 40 days after the filing.

*See* Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 2003(a).

On December 30, 1991, Lomas filed the proof of claim in issue, the relevant, "Total Debt" portion of which was itemized as follows:

A. Total Debt as of July 30, 1991

| | | |
|---|---|---|
| 1. | Principal Balance | $ 9,567.89 |
| 2. | Interest from Last Paid Installment | $ 3,679.08 |
| 3. | Late Charges | $ 243.20 |
| 4. | Escrow Advance | $ 3,985.50 |
| 5. | Pre-petition Attorney Fees | $ 4,860.25 |
| 6. | Other amounts for Inspection Fees, Appraisal Fees, NSF Check Charges, and Other Charges | $ 150.00 |
| | TOTAL DEBT | $22,485.92 |

On January 23, 1992, no administration of the case had taken place and, consequently, Lomas had received no payments. Therefore, Lomas filed a motion for relief from the automatic stay to permit it to foreclose on the Debtor's home ("the Motion"). The Motion was listed for a hearing on February 20, 1992.

Prior to the hearing on the Motion, the Debtor filed not only an Answer, but also, on February 11, 1992, the instant adversary Complaint. The Complaint attacked the amount requested by Lomas on the "Total Debt" portion of its claim. In Count I, it was alleged that the original mortgage on the Debtor's home, made by the Debtor and her late husband, Booker T. Johnson, Jr., on July 6, 1971, merged with a state-court foreclosure judgment entered on June 20, 1991, in the amount of $13,309.05. Consequently, the Debtor argued that all of the entries itemized in the "Total Debt" portion of the proof of claim were merged into the $13,309.05 judgment figure. She further argued that interest at six (6%) percent per annum between the date of the judgment and the date of the Debtor's bankruptcy filing was all that could be appended thereto, which amounted to only $85.56. Therefore, the appropriate amount of the total secured claim of Lomas was, according to the Debtor, capped at $13,-394.61.

In Count II, the Debtor asserted that a violation of the TILA existed in the mortgage documents. Moreover, since the mortgage pre-dated 1980, she pointed out that both she and her late husband were potentially entitled to assert recoupment claims of $1,000 against Lomas' claim. *See In re Ashhurst,* 80 B.R. 49 (Bankr.E.D.Pa. 1987). The Debtor therefore made a TILA claim on her late husband's behalf as well as her own behalf and argued that the Lomas' total claim should be reduced by $2,000 to $11,394.61.

On February 20, 1992, the parties agreed to continue the hearing on the Motion to the same date as that established for the trial of the proceeding, *i.e.,* April 7, 1992. In the meantime, this court, in reviewing the Motion papers, noted that the case had not been administered and prompted the Trustee to conduct a meeting of creditors (which took place on March 27, 1992) and schedule a confirmation hearing (which is listed on July 7, 1992).

On April 7, 1992, the parties requested a continuance of the hearing on the Motion and the trial of the proceeding until April 28, 1992. The court allowed this continuance, but entered an Order precluding any further continuances. On April 28, 1992, Lomas withdrew the Motion and the parties agreed that the proceeding would be presented to this court on a Stipulation of Facts, to be filed by May 5, 1992, and Briefs to be filed by May 12, 1992 (the Debtor), and May 19, 1992 (Lomas).

The Stipulation of Facts includes the docket entries from the state court foreclosure action and Lomas' Statement of Account, which itemized all changes against the account for taxes and insurance advanced by Lomas and its assignors from 1987 to date. The docket entries reveal that a default judgment in the amount of $13,309.05 was originally entered against the Debtor and her husband on October 5, 1987. Damages were subsequently reassessed in the amount of $15,741.33 "plus interest" on February 24, 1989. On November 15, 1989, however, the judgment was opened as to the Debtor only. Despite a subsequent defense by the Debtor, summary judgment was entered in favor of

Lomas on June 20, 1991, "in the amount of $13,309.05, plus interest and costs."

The Statement of Account recites the following transactions in 1991:

| Post Date | Date Due | Total Payment | Transaction Description |
|---|---|---|---|
| 1/16/91 | 1/15/91 | –112.50 | Hazard Insurance |
| 1/25/91 | 2/1/91 | –2.47 | FHA Insurance |
| 1/30/91 | 2/1/91 | –890.14 | Tax Disbursement |
| 2/22/91 | 3/1/91 | –2.47 | FHA Insurance |
| 3/8/91 | 3/1/91 | –12.56 | Hazard Temp. Ins. |
| 3/21/91 | 1/31/91 | –7.14 | Hazard Temp. Ins. |
| 3/22/91 | 4/1/91 | –2.47 | FHA Insurance |
| 4/1/91 | 4/1/91 | –12.56 | Hazard Temp. Ins. |
| 4/26/91 | 5/1/91 | –2.47 | FHA Insurance |
| 5/2/91 | 5/1/91 | –12.56 | Hazard Temp. Ins. |
| 5/24/91 | 6/1/91 | –2.47 | FHA Insurance |
| 5/30/91 | 6/1/91 | –12.56 | Hazard Temp. Ins. |
| 6/25/91 | 7/10/91 | –2.37 | FHA Insurance |
| 7/22/91 | 8/10/91 | –2.46 | FHA Insurance |
| 7/24/91 | 7/1/91 | –12.57 | Hazard Temp. Ins. |
| 8/12/91 | 8/1/91 | –12.57 | Hazard Temp. Ins. |
| 8/21/91 | 9/10/91 | –2.57 | FHA Insurance |
| 9/18/91 | 10/10/91 | –2.08 | FHA Insurance |
| 10/7/91 | 10/1/91 | –12.57 | Hazard Temp. Ins. |
| 10/23/91 | 11/10/91 | –2.08 | FHA Insurance |
| 11/22/91 | 12/10/91 | –2.08 | FHA Insurance |
| 12/27/91 | 1/10/92 | –2.08 | FHA Insurance |
| 2/3/92 | 2/10/92 | –4.16 | FHA Insurance |
| 2/11/92 | 2/28/92 | –890.14 | Tax Disbursement |

The only paragraph in the Stipulation relating to the Debtor's TILA claims states as follows:

10. Debtor's husband, Booker T. Johnson, was a cosigner on the mortgage and a coowner of debtor's home at 6121 Ellsworth St., Philadelphia, Pa. Booker T. Johnson died intestate on November 30, 1989, while married to debtor with no living children other than his children by debtor.

C. Discussion

1. SINCE THE STATE COURT EXPRESSLY ESTABLISHED THE AMOUNT OF ITS JUDGMENT AS $13,309.05 ON JUNE 20, 1991, LOMAS IS LIMITED TO A CLAIM IN THIS AMOUNT, PLUS ANY POST-JUDGMENT INTEREST THROUGH THE DATE OF CONFIRMATION AND REASONABLE POST-JUDGMENT EXPENDITURES ON THE DEBTOR'S BEHALF.

Lomas does not dispute the general principle that, pursuant to the doctrine of merger, its claim must be measured in accordance with the state court foreclosure judgment, rather than by computation of what the components of its claim might be had judgment never been entered. *See In re Stendardo*, 139 B.R. 128, 129–30 (E.D.Pa.1992) ("*Stendardo II*"), rev'g *In re Stendardo*, 117 B.R. 833 (Bankr.E.D.Pa. 1990) ("*Stendardo I*"); *In re Blakeney*, 126 B.R. 449, 458 (Bankr.E.D.Pa.1991)

(debtor as well as mortgagee is bound by the terms of a foreclosure judgment); *In re Carter*, 1990 WL 92456, slip op. at *1 (Bankr.E.D.Pa. June 28, 1990); *In re Klein*, 106 B.R. 396, 401–02 (Bankr.E.D.Pa. 1989); *In re Rorie*, 98 B.R. 215, 218–19 (Bankr.E.D.Pa.1989); and *In re Herbert*, 86 B.R. 433, 436–37 (Bankr.E.D.Pa.1988), *aff'd sub nom. Herbert v. Federal Nat'l Mortgage Ass'n*, 102 B.R. 407 (E.D.Pa.1989). Lomas apparently does not dispute the fact that most of its pre-judgment claims stated in its "Total Debt" claim are thus merged into the judgment and cannot be reasserted as separate entries on its proof of claim.

Lomas also does not apparently dispute the corollary to the principle of merger that the measurement of its post-judgment interest is limited by the Pennsylvania statutory legal rate of interest, which is six (6%) percent per annum. 41 P.S. § 202. *See, e.g., Stendardo II, supra*, 139 B.R. at 131–32; *Blakeney, supra*, 126 B.R. at 458; and *Rorie, supra*, 98 B.R. at 219.

However, Lomas *does* argue that it should not be bound by the $13,309.05 figure in several specific respects. Firstly, it asserts that "it is obvious that the state court considered nothing other than the amounts due as of the filing of the Complaint." Memorandum of Law in Opposition to Debtor's Objection to Claim of Lomas Mortgage USA, at 2. Secondly, it contends that "both debtor and this court recognize that Lomas has the right to reassess its damage [sic] in state court." *Id.* Thirdly, it argues that "the filing of the proof of claim constitutes a request by Lomas to reassess the amount of its judgment." *Id.* Therefore, Lomas argues that this court can reassess its damages in the state court action and increase its claim for interest.

We do not agree with Lomas' implicit contention that the state court mechanically selected, from the original judgment amount, the figure in which it entered judgment. While we have only the state court docket as a means of ascertaining the intent of the state court, we find that the amount of the judgment entered, in the context of the action in issue, is significant.

In February, 1989, the state court reassessed its earlier $13,309.05 judgment at $15,741.33. However, in June, 1991, after opening the judgment, that court "re-reassessed" damages at the earlier $13,309.05 figure. Given this sequence of events, it seems unlikely that the state court picked the figure in which it chose to enter judgment mechanically.

In *Carter, supra*, slip op. at *1, the mortgagee argued, and the debtor conceded, that, in requesting the state court to enter judgment in foreclosure in a certain amount, the mortgagee forgot to include a $10,000 escrow deficiency. Nevertheless, we refused the mortgagee's request that we "amend" its judgment, pointing out that to do so would

> run ... counter to the principal that state-court judgments may not be attacked in bankruptcy court unless the state court entering them lacked subject matter jurisdiction or collusion or fraud was involved in the entry of the judgment. *See, e.g., Heiser v. Woodruff,* 327 U.S. 726, 736 [66 S.Ct. 853, 857, 90 L.Ed. 970] (1946); *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 484 U.S. 1007 [108 S.Ct. 701, 98 L.Ed.2d 652] (1988); and *In re Garafano,* 99 B.R. 624, 630–31 (Bankr.E.D.Pa.1989).

*Id.,* slip op. at *2.

Certainly, it is true that Lomas had the right to have its damages reassessed by the state court. Furthermore, the merger of the judgment with the mortgage should properly take into account the most recently reassessed damages. *See Herbert, supra,* 86 B.R. at 437–38. It is also true, as Lomas points out, that the automatic stay arising from the bankruptcy filing prevented it from reassessing damages after July 30, 1991.

However, damages here were fixed at $13,309.05 on June 20, 1991, only 40 days prior to the bankruptcy filing. Hence, very little prejudice was caused to Lomas by its being unable to reassess damages between the date of judgment and the date of filing. What Lomas really appears to be arguing is that the state court erred in assessing its damages at $13,309.05 as of June 20, 1991.

However, the time for appeal of this decision of the state court had run prior to the bankruptcy filing. Therefore, Lomas is bound by the state court's quantification of its claim.

We note that the state court did allow that "interest and costs" were to be appended to its judgment. We also note that, in *Rorie*, Judge Fox of this court held that a judgment order which contained a similar appendage could be reassessed by the bankruptcy court. 98 B.R. at 220–21.

As we stated in *Carter*, slip op. at *2–*3, we read *Rorie* as making a calculation of pre-judgment interest and costs which the court found that the state court intended to allow to the mortgagee. It is much more difficult to make an argument that such a re-calculation of damages was intended in the instant factual setting, where damages were fixed at a certain sum; then reassessed at a higher figure; and then, after the signing of the underlying judgment, reset again at the previous figure. It appears to us that the state court consciously and deliberately picked the $13,309.05 figure. In this setting, "interest" appears confined to any award of future, post-judgment interest.

The facts of the instant case reinforce our fear, expressed in *Carter*, that a broad reading of *Rorie* may undermine the principles of *Heiser v. Woodruff*, and the other cases cited in the quotation appearing on page 854 *supra*. It is very difficult to understand precisely what a state court has in mind when it fixes damages in a foreclosure suit at a sum certain. However, because state court judgments are entitled to full faith and credit, we must accept them at their face value. We consider it violative of our duty to provide full faith and credit to such judgments to reassess damages which have been already established by those courts. We are especially reluctant to do so when the damages are fixed by that court only after an apparent dispute and resolution by the state court of that very issue.

Therefore, we conclude that the $13,-309.05 is the judgment figure with which we must work in calculating Lomas' claim.

The Debtor urges us to measure the interest to which Lomas is due from the date of the judgment to the date of the Debtor's bankruptcy filing. While this admittedly was our calculation formula in *In re Smith*, 92 B.R. 127, 131 (Bankr.E.D.Pa. 1988), *rev'd on other grounds sub nom. Smith v. Kissell Co.*, 98 B.R. 708 (E.D.Pa. 1989); and *Herbert, supra*, 86 B.R. at 438, we corrected the error of creating an unjustified "gap" period of interest between the filing date and the confirmation date in *Blakeney, supra*, 126 B.R. at 458; and *Klein, supra*, 106 B.R. at 402 n. 7. Clearly, Lomas is entitled to interest at the legal rate for the period from June 20, 1991, through at least the earliest possible date of confirmation of the Debtor's plan, *i.e.*, July 7, 1992. We calculate the interest for this period to be $833.59.

The final issue is whether Lomas is entitled to any of its expenditures for insurance, taxes, and other fees enunciated on its Statement of Account. We conclude that all charges listed prior to the date of judgment, June 20, 1991, are merged or subsumed within that judgment.

The Debtor further argues that *Stendardo II* holds that all post-judgment costs are also merged with the judgment and are not collectible under the terms of the mortgage contract, which the parties have stipulated is identical in format to that considered in *Stendardo*. However, we do not accept this argument for several reasons. Firstly, the instant state court judgment specifically allows for additional "costs" as well as "interest." There is no indication that the state court foreclosure judgment in *Stendardo* included any comparable language. While we are unwilling to read *Rorie* broadly and allow a mortgagee to reach back to a time prior to the entry of judgment to tack on interest or costs, we also believe that the allowance of "interest and costs" must stand for something. That "something" is, we believe, a right of Lomas to add reasonable post-petition costs as well as post-petition interest to its claim.

Secondly, we have carefully reviewed *Stendardo II* and simply cannot bring ourselves to follow it. The *Stendardo II* court

appears to hold that a mortgagee is unable to collect any post-judgment costs because of the doctrine of merger of the mortgage into the judgment. 139 B.R. at 130–31. Nevertheless, recognizing that this holding places the mortgagee in the impossible position of either jeopardizing its investment by allowing a foreclosed premises to go uninsured and/or become delinquent in taxes, or of making a gift of such payments to the mortgagor, the court allows that the mortgagee could have protected itself by "language in the mortgage which clearly indicates that the obligation of the Debtors to make monthly payments for these items continues even after FNMA obtains a judgment in a foreclosure action." *Id.*

However, if the mortgage is merged within the judgment, it appears anomalous to condition the mortgagee's right to recovery on the very terms of that mortgage. The holding of *In re Presque Isle Apartments, L.P.*, 112 B.R. 744, 747 (Bankr. W.D.Pa.1990) (legal rate applies to postpetition interest unless the mortgage provides otherwise), cited by *Stendardo II* in support of its conclusion on this point, does not, in our view, support this result. Rather, we believe that our decision in *Stendardo I, supra,* 117 B.R. at 838–39, accurately holds that merger does not affect any terms of the mortgage except its payment terms (which is not inconsistent with *Presque Isle*).

■ As we noted in *In re Morningstar Enterprises, Inc.*, 128 B.R. 102, 106 n. 1 (Bankr.E.D.Pa.1991), we are not bound to blindly follow a decision of a single district court judge in a subsequent case. *See Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371–72 (3d Cir. 1991); and *In re Gaylor*, 123 B.R. 236, 241–43 (Bankr.E.D.Mich.1991). We decline to do so here.

We therefore conclude that Lomas is entitled to add the reasonable costs expended by it to protect its rights after June 20, 1991, to the claim. These total $947.73, the largest being an $890.14 tax disbursement in February, 1992. The subtotal of Lomas' claim, before considering the alleged TILA recoupment, is therefore measured at $13,-309.05, plus interest of $833.59, plus costs of $947.73, or a total of $15,090.37.

2. SINCE THE DEBTOR HAS NOT BEEN OFFICIALLY APPOINTED AS A REPRESENTATIVE OF HER LATE HUSBAND'S ESTATE AND HAS NOT BROUGHT SUIT IN A REPRESENTATIVE CAPACITY, SHE CANNOT ENHANCE HER $1,000 TILA RECOUPMENT BY ADDING THE HUSBAND'S POTENTIAL CLAIM THERETO.

■ Lomas concedes that TILA violations exist in the pertinent loan documents and that the Debtor is accordingly entitled to a $1,000 TILA recoupment claim. It also does not apparently dispute the *Ashhurst* holding that, if the husband were a party to this bankruptcy and this proceeding, since the mortgage precedes 1980 and the enactment of 15 U.S.C. § 1640(d), it would be liable for a $2,000 recoupment. Rather, it argues that only the Debtor, in only her individual capacity, is the plaintiff to this suit, and that, in these circumstances, she cannot recover on behalf of another.

We agree with this analysis. We held as follows in similar circumstances in *In re Evans*, 114 B.R. 434, 437 (Bankr.E.D.Pa. 1990) (*"Evans I"*):

A claim in her own capacity is all that she has pleaded. Given this pleading, the Defendant correctly identifies the issue as one of standing.... Moreover, the Defendant is clearly entitled to prevail on the ground that indeed the Debtor lacks standing to maintain this action on her own behalf.

The Debtor argues that this case is distinguishable from *In re Lopez*, 75 B.R. 961, 965 (Bankr.E.D.Pa.1987), *aff'd*, 82 B.R. 712 (E.D.Pa.1988), because she is "no stranger but rather an original party to the transaction" and is "the direct intestate heir of Mr. Johnson's interests." Memorandum of Law in Support of Debtor's Objection to Claim of Lomas Mortgage, USA, at 9, 10.

The first assertion is correct. And the second assertion may be correct, if the decedent's estate did not exceed $30,000.

*See* 20 Pa.C.S. § 2102(3). However, as we held in *Evans I, supra,* 114 B.R. at 438, unless and until a party-plaintiff actually *is* appointed as a representative of the estate, it seems clear that the said party cannot maintain an action on behalf of the decedent-obligor's estate. *See Perry,* ... [*v. Beneficial Finance Co.*], 88 F.R.D. [221,] at 223 [ (W.D.N.Y.1980) ]; [*In re*] *Gadson,* ... [Bankr. No. 88–14088F,] slip op. at 10–11 [ (Bankr.E.D.Pa. Jan. 12, 1990) ] (if and only if debtor is appointed as decedent-obligor's personal representative can she assert a TILA recoupment claim on behalf of decedent-obligor); and *Lopez, supra,* 75 B.R. at 965 (debtor who is not the personal representative of decedent-obligor and whose relationship to the decedent-obligor is unclear cannot seek TILA recoupment).

This conclusion was reiterated later in that same case in *In re Evans,* 120 B.R. 817, 818, 820 (Bankr.E.D.Pa.1990) (*"Evans II"*), when the debtor subsequently returned to the court seeking rescission, under the TILA, of a contract which she signed for her alleged father in the capacity of "Trustee for [his] Estate."[1]

The instant Debtor does not allege that she has been appointed a personal representative of her late husband's estate. Therefore, under the holding of both *Evans* cases, she cannot be granted relief on his behalf.

We note at least two other impediments to our granting the Debtor's relief as to her claims on behalf of her husband in this proceeding: (1) the failure of the Debtor to sue in a representative capacity; and (2) the apparent lack of jurisdiction of this court to hear a claim of a non-debtor, *i.e.,* the late husband or his estate. Amending the Complaint and administering the husband's estate in the state court system could cure two of the defects. However, the jurisdictional defect would appear to be incurable.

Therefore, we hold that the Debtor is limited to a $1,000 recoupment claim, reducing Lomas' claim to $14,090.37.

## D. Conclusion

An Order allowing Lomas' claim in the amount of $14,090.37 will therefore be entered. Since the Debtor's plan appears slightly insufficiently funded to liquidate Lomas' total allowed secured claim in this amount, we will grant the Debtor a brief opportunity to amend her plan. However, due to the previous delays in administration of this case, we will allow her only until June 15, 1992, to do so, in order that the confirmation hearing scheduled on July 7, 1992, will be the last.

---

**1.** The result in *Evans II* was rendered problematic because any party "having an ownership interest in the dwelling that is encumbered by the creditor's security interest," Official Staff Commentary on Regulation & Truth–in–Lending, ¶ 226.23(a)(2), has a right to rescind a transaction. The instant case does not involve a rescission claim and therefore does not implicate this Commentary.