**In re Minerva SOTO, Debtor.**

**Minerva SOTO, Plaintiff,**

**v.**

**PNC BANK, Edward Sparkman, Chapter 7 Trustee, Defendants.**

**Bankruptcy No. 96–31439DWS.
Adversary No. 97–0684.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 30, 1998.

Elizabeth Goodell, Philadelphia, PA, for Plaintiff.

Jonathan J. Bart, Philadelphia, PA, for PNC Bank.

Edward Sparkman, Philadelphia, PA, Chapter 13 Trustee.

Dave P. Adams, Philadelphia, PA, U.S. Trustee.

## OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Motion of Defendant PNC Bank, N.A. (the "Bank") for Judgment on the Pleadings ("Motion"). A hearing on the Motion was held at which the parties presented oral argument. At the close of the hearing, the parties were granted the opportunity to file supplemental briefs with a two week deadline imposed for that purpose. Plaintiff, Minerva Soto ("Debtor") filed such a brief; the Bank did not.[1] The matter is now ripe for decision. Upon consideration, I grant the Motion in part and deny it in part.

**BACKGROUND**[2]

■ On or about July 29, 1991, Debtor's nephew, Luis Maldonado ("Luis"), obtained a

---

1. The Bank's original brief contains cursory arguments with minimal and in some instances no case law to support them. *See e.g* ., Memorandum of Law of Motion of Defendant PNC Bank, N.A. for Judgment on the Pleadings ("Bank's Brief") at 7–8. Moreover, at the hearing, the Bank raised additional arguments not included in its brief. Nonetheless, the Bank chose not to file a supplementary brief.

2. On a motion for judgment on the pleadings, I must construe the allegations in the pleadings, and all inferences to be drawn therefrom, in the light most favorable to the plaintiff. *See infra* at 7. Thus, the facts set forth in this section are based upon: (i) the allegations set forth in the Debtor's Complaint to Determine Validity and Extent of Lien and to Object to Proof of Claim of PNC Bank, N.A. (the "Complaint"); (ii) the allegations which Debtor admitted in the Motion;

and (iii) the documents attached as Exhibits D and E to the Bank's Motion. I take judicial notice of these latter documents pursuant to Rule 201 of the Federal Rules of Evidence. *See infra* discussion at 6–7.

The Bank also attached as Exhibit C to its Motion a copy of the Mortgage and Notice of Right to Cancel which Debtor allegedly received and signed. These documents were submitted to support the Bank's allegation that Debtor *"did* in fact obtain and sign a mortgage and right to rescind." Motion ¶ 9 (emphasis in original). However, at the hearing, the Bank represented that, although these documents were attached to its Motion, it was not relying upon them in requesting judgment on the pleadings and that, for purposes of its Motion, the only matters upon which it is relying outside of the pleadings are Exhibits A, B, D & E to the Motion. Based on

loan in the amount of $16,036.91 from the Bank. Complaint ¶ 8 & Exhibit B.[3] He executed an installment note ("Note") evidencing the terms of the loan. The Note is included in the same document as the Bank's Truth–In–Lending Act ("TILA") disclosures. *Id.*

As security for the aforementioned loan to Luis, Debtor granted PNC a mortgage ("Mortgage") on her house at 1610 South Orkney Street in Philadelphia, Pennsylvania. Complaint ¶ 8 & Exhibit A. Debtor, who speaks little English and cannot read it, was told by her nephew that signing the Mortgage meant that "she was helping him purchase a car and that she incurred no risk at all by signing the document." Complaint ¶¶ 9, 10. No one at the Bank ever informed Debtor that signing the Mortgage meant that her house was being put up as security for Luis' loan or that she risked losing the home if Luis failed to comply with the terms of the Note. *Id.* ¶ 11. Moreover, the Bank never provided Debtor with a copy of the Mortgage, any TILA disclosure documents or any notices of rescission/right to cancel. *Id.* ¶ 14. None of the proceeds from the loan benefitted Debtor. *Id.* ¶ 12.

The Bank subsequently instituted a mortgage foreclosure action in state court ("State Court") against Debtor alleging that Luis defaulted on his payments under the Note. *Id.* ¶ 15. After five attempts to serve Debtor with the Complaint at her home, the Bank filed a motion requesting the State Court to, *inter alia,* enter an order pursuant to Rule 430(a) of the Pennsylvania Rules of Civil Procedure directing service of the Complaint by ordinary mail. Exhibit E to Motion. This motion was granted by Order dated June 25, 1996. *Id.* Shortly thereafter, a default judgment (the "Judgment") was granted in favor of the Bank. Complaint ¶ 15.

A Sheriff's Sale of Debtor's home was scheduled for December 2, 1996. *Id.* ¶ 16.

Approximately one week before the scheduled sale, Debtor filed a Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. *Id.* ¶ 17.

On or about January 6, 1997, the Bank filed a Proof of Claim for $4,166.86. Complaint ¶ 19 & Exhibit C thereto. The total amount of the claim is listed as secured. *Id.*

Debtor subsequently filed the Complaint which contains seven counts. These counts are labeled: Count I–Objection; Count II–Merger; Count III–Act No. 6 of 1974, 41 P.S. § 401 *et seq.;* Count IV–Truth–In–Lending, 15 U.S.C. § 1601 *et seq.;* Count V–Unfair & Deceptive Acts & Practices, 73 P.S. § 201–1 *et seq.;* Count VI–Fraud; and Count VII–Fraud in the Factum. The Bank filed its Answer asserting as affirmative defenses that Debtor's claims are barred by: (i) the doctrine of res judicata; (ii) the statute of limitations; and (iii) the doctrines of ratification, waiver and estoppel.

Thereafter, the Bank filed its Motion and Debtor responded thereto.[4] After the hearing on the Motion, Debtor filed her supplemental brief.

In the Motion, the Bank contends that Counts I–III and V–VII are barred by the doctrine of res judicata because the Judgment is *res judicata* to all claims constituting a defense to such judgment. The Bank also asserts that Debtor's claim in Count II lacks merit and that her claim in Count III is irrelevant because it has not sought attorney's fees in this action. As to Count IV which asserts a claim for TILA violations, the Bank contends this claim is barred by the statute of limitations and, further, that since Debtor was neither an applicant for credit nor the recipient of an extension of credit, she was not entitled to receive TILA disclosures.

---

this clarification, I am excluding the following items from my consideration herein: (i) the documents attached as Exhibit C to the Motion; and (ii) the allegations set forth in paragraphs 9 and 10 of the Motion that Debtor was given a copy of the Mortgage, right to rescind and TILA disclosures.

**3.** Notably, the Bank admitted paragraphs 2–3, 6–8, 15–17, 19, 21, 32–33 and 39 of the Complaint.

*See* Answer of Defendant PNC Bank, NA to the Complaint ("Answer").

**4.** Debtor filed an answer to the Motion with a cross-motion for partial summary judgment. The Bank has not yet responded to Debtor's cross-motion. At the hearing, it was agreed that I would rule upon the Motion before the cross-motion would be answered.

In response, the Debtor argues that the Motion should be treated as a motion for summary judgment because the Bank submitted matters outside of the pleadings in support thereof. As to the Bank's res judicata argument, the Debtor contends that the Judgment is not res judicata as to her claims because the State Court lacked personal and subject matter jurisdiction in the foreclosure action. The Debtor further argues that, even if the Judgment is not void, her claims under the TILA and Pennsylvania's Unfair Trade Practices law are not barred by res judicata because: (i) these claims constituted permissive counterclaims in the foreclosure action; and (ii) her TILA claims may be raised in recoupment. Lastly, Debtor argues that she was entitled to receive TILA disclosures from the Bank because "[e]ach person who has a right to rescind a consumer credit transaction under 15 U.S.C. § 1635 must be given rescission forms and the material disclosures required by the TILA generally." Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings and In Support of Plaintiff's Cross Motion for Partial Summary Judgment ("Debtor's Brief") at 23.

## DISCUSSION

### I. Treatment of Motion

As a preliminary matter, Debtor contends that the Bank's Motion should be treated as a motion for summary judgment since the Bank has submitted matters outside the record for my consideration. In support of this contention, Debtor cites to Rule 12(c) of the Federal Rules of Civil Procedure which is made applicable hereto by Fed.R.Bankr.P. 7012(b). Rule 12(c) provides, in pertinent part:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one

for summary judgment and disposed of as provided in Rule 56.

Fed.R.Civ.P. 12(c).

▮ The only matters outside of the pleadings upon which the Bank is relying in support of its Motion and, consequently, the only matters which I am considering outside of the pleadings, are the documents contained in Exhibits D and E to its Motion.[5] These documents are from the record in the State Court Litigation.[6] I can take judicial notice of these documents, *see U.S. ex rel. Geisler v. Walters,* 510 F.2d 887, 890 n. 4 (3d Cir.1975) (taking judicial notice of briefs and petitions filed in state appellate court litigation); *Commonwealth v. Brown,* 373 F.2d 771, 778 (3d Cir.1967) ("a federal court may take judicial notice of matters of record in state courts within its jurisdiction"), and my consideration of them does not require me to convert the Bank's Motion into a motion for summary judgment, *see DiNicola v. DiPaolo,* 945 F.Supp. 848, 855 n. 2 (W.D.Pa.1996) (courts are "entitled to take judicial notice of public records in considering a ... motion for judgment on the pleadings"); *see also Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017–18 (5th Cir.1996) (courts may consider matters of which they can take judicial notice in deciding motion to dismiss); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991) (court may take judicial notice of matters of public record in ruling on motion for judgment on the pleadings). Accordingly, the Bank's Motion will be treated as a motion for judgment on the pleadings.

### II. Standard of Review

In ruling on a motion for judgment on the pleadings, the court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 290–91 (3d Cir.1988). This requires the court to accept the allegations in

---

**5.** While the Bank submitted other matters outside of the record in its Motion, it advised me at the hearing that it was not relying on these matters in seeking judgment on the pleadings. *See supra* note 2.

**6.** In paragraph 12 of Plaintiff's Answer to Defendant PNC Bank's Motion for Judgment on the Pleadings and Cross Motion for Summary Judgment, Plaintiff admits that "Exhibits D and E are copies of the filings of [the Bank] in the state foreclosure action against [her]."

the complaint as true even if they are in conflict with the defendant's answer. *Tudor Development Group, Inc. v. United States Fidelity & Guaranty Company*, 768 F.Supp. 493, 495 (M.D.Pa.1991). Judgment will not be granted "'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Jablonski, supra*, at 290 (*quoting Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1054 (3d Cir.1980)); *Collier–Higginbotham v. Philadelphia Child Guidance Center*, 1997 WL 381759, at *1 (E.D.Pa. June 27, 1997).

### III. Res Judicata

■ The Bank contends that all counts of the Complaint except for Count IV are barred by the doctrine of *res judicata* by reason of the Judgment which it obtained in the foreclosure action in State Court.[7] Debtor disagrees, arguing that *res judicata* does not apply because the State Court lacked both personal and subject matter jurisdiction in that action.

The Bank supports its position with two cases, namely *In re Siciliano*, 167 B.R. 999 (Bankr.E.D.Pa.1994), and *Garafano v. Trustees of the Amalgamated Insurance Fund (In re Garafano)*, 99 B.R. 624 (Bankr.E.D.Pa. 1989). Neither of these cases involved the defense being raised here.[8]

In the former case, the debtor sought to collaterally attack the amount of attorney's fees and costs recovered against him in a prepetition mortgage foreclosure action

which he failed to contest in state court. The bankruptcy judge held that the debtor's claims were barred by *res judicata*. *Siciliano, supra*, 167 B.R. at 1013.[9] However, the debtor did not argue, as the Debtor is doing here, that the state court lacked jurisdiction to issue the foreclosure judgment.

In *Garafano, supra*, the debtor sought to have the bankruptcy court exercise its equitable powers to review a pre-petition default judgment that was entered against him in district court and allow him to raise defenses to the judgment that he failed to assert in district court. Refusing to do so, bankruptcy court relied upon the following principles of law regarding *res judicata:*

> Where a valid judgment is rendered by a court of competent jurisdiction, *res judicata*, also known as claims preclusion, prevents a party from asserting a claim or defense which could have been asserted in the first action in any subsequent proceeding.... Absent some showing of fraud, *res judicata* applies to a judgment obtained by default as well as to one entered after trial. Thus, *res judicata* will bar relitigation of a claim or defense regardless of whether such claim or defense was previously raised, so long as the debtor was afforded a fair opportunity to do so.

*Garafano, supra*, 99 B.R. at 629 (citations omitted). More importantly for purposes of the instant matter, however, the bankruptcy court also observed that:

> [T]he bankruptcy court is not bound by a prior judgment which is rendered by a

---

**7.** The Full Faith and Credit statute requires federal courts, including bankruptcy courts, to give the acts and judicial proceedings of any state court the "same full faith and credit ... as they have by law or usage in the courts of such State[,]" 28 U.S.C. § 1738. *See also Keene Corp. v. Acstar Insurance Co. (In re Keene Corp.)*, 162 B.R. 935, 946 (Bankr.S.D.N.Y.1994) ("Section 1738 applies to Bankruptcy Courts"); *In re Holiday Interval, Inc.*, 114 B.R. 177, 180 (Bankr. W.D.Mo.1989) ("As part of the federal system, the mandate of 1738 applies to bankruptcy courts."). Accordingly, I must give the Judgment the same full faith and credit that it would have under the law of Pennsylvania.

**8.** Debtor raised the arguments that the State Court lacked subject matter and personal jurisdiction in her response to the Bank's Motion. The Bank was given the opportunity to file a

post-hearing brief in which it could have responded to these arguments. The Bank chose not to do so.

**9.** The bankruptcy judge stated, in pertinent part:

> Debtor's claims are barred by res judicata in light of the uncontested State Court mortgage foreclosure judgment him. The Debtor has effectively claimed that [the mortgagee] attempted to charge him $1,200 which he deems excessive fees, inconsistent with [the mortgagee's] earlier agreement with him, as a condition to cure his mortgage in 1989.... [W]hat is indisputably clear is that these purported *violations of 41 P.S. §§ 403, 404, 406* in servicing the Debtor's mortgage ... had to be raised in the State Court foreclosure action or they were lost.

*Siciliano, supra*, 167 B.R. at 1013.

court lacking proper jurisdiction over the parties or subject matter, or whether the judgment is obtained by collusion or fraud. *Id.* at 630–31. With these principles in mind, the bankruptcy court examined the debtor's arguments against the default judgment. The court concluded that the arguments constituted substantive defenses to the judgment and that the debtor was not claiming that the district court lacked jurisdiction over the parties or subject matter [10] or that the judgment was obtained by fraud.[11] *Id.* at 631–634. Based on these findings, the bankruptcy court held that the district court's judgment against the debtor was res judicata and that the debtor was barred from collaterally attacking it.

■ Thus, neither *Siciliano* nor *Garafano* dealt with the situation at issue here. Under Pennsylvania law, "a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void and is subject to attack by the parties in the same court or may be collaterally attacked at any time." *Commonwealth ex. rel. Howard v. Howard,* 138 Pa.Super. 505, 508, 10 A.2d 779, 781 (1940). *See also Barnes v. McKellar,* 434 Pa.Super. 597, 604, 644 A.2d 770, 773 (1994) (*citing Howard, supra,* for same principle of law), *appeal denied,* 539 Pa. 663, 652 A.2d 834 (1994). Based on this law, if the State Court lacked subject matter or personal jurisdiction in the foreclosure action, Debtor may collaterally attack the Judgment in this court.[12]

### (a) *Personal Jurisdiction*

Debtor contends that the State Court lacked personal jurisdiction over her in the foreclosure action because the Bank failed to file a return of service as required by Pa. R.C.P. 405.[13] This rule which sets forth the requirements for return of service states, in pertinent part:

(a) When service of original process has been made the sheriff or other person making services shall make a return of service forthwith. . . .

(b) A return of service shall set forth the date, time, place and manner of service, the identity of the person served and any other facts necessary for the court to determine whether proper service has been made.

\*　　\*　　\*　　\*　　\*　　\*

(d) A return of service by a person other than the sheriff shall be by affidavit. . . .

(e) A return of service . . . shall be filed with the prothonotary.

Pa.R.C.P. 405. Pursuant to this rule, the Bank was required to file a return of service when it effected service of its foreclosure complaint on the Debtor.

In *Sharp v. Valley Forge Medical Center and Heart Hospital,* 422 Pa. 124, 221 A.2d 185 (1966), the Pennsylvania Supreme Court offered the following comments on the rules of service:

The rules relating to service of process must be strictly followed, and jurisdiction of the court over the person of the defendant is dependent upon proper service having been made: *McCall v. Gates,* 354 Pa. 158, 47 A.2d 211 (1946). There is no pre-

---

**10.** Citing to *Main Line Federal Savings & Loan Assoc. v. Joyce,* 632 F.Supp. 9 (E.D.Pa.1986), for the proposition that "proper notice under 41 P.S. § 403 is a jurisdictional prerequisite to a foreclosure action," the bankruptcy court specifically noted that the debtor was not complaining that he did not have notice of the foreclosure action.

**11.** Although the debtor argued that the district court judgment was obtained by fraud, the court concluded that, what the debtor was asserting was not fraud but a substantive defense to the judgment, *i.e.,* that he was not personally liable on the debt. *Garafano, supra,* 99 B.R. at 632.

**12.** The Bank appears to concede this point since it stated in its pre-trial brief that "[o]nly if a

judgment is obtained by collusion or where there is no jurisdiction can . . . an uncontested or default foreclosure judgment be attacked." Bank's Brief at 6.

**13.** Debtor also argues that the State Court lacked jurisdiction over her because the Bank improperly obtained an order allowing service by ordinary mail and posting rather than by handing the complaint directly to her. The Bank obtained this order by filing a motion in State Court for such relief. Debtor does not contend that this procedure was wrong—only that the State Court's ruling on the motion was erroneous. However, Debtor offers no basis for why I have authority to review the State Court's Order. Accordingly, I refuse to do so.

sumption as to the validity of the service and the return itself is required to set forth service in conformance with the rules. *See, Neff v. Tribune Printing Co.,* 421 Pa. 122, 218 A.2d 756 (1966).

422 Pa. at 127, 221 A.2d at 187 (emphasis added). More recently, in *Cintas Corporation v. Lee's Cleaning Services, Inc.,* 549 Pa. 84, 700 A.2d 915 (1997), the Pennsylvania Supreme Court stressed the importance of service of process, stating:

> Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed. Without valid service, a court lacks personal jurisdiction of a defendant and is powerless to enter judgment against him or her. Thus, improper service is not merely a procedural defect that can be ignored when a defendant subsequently learns of the action against him or her. However, the absence of or a defect in a return of service does not necessarily divest a court of jurisdiction of a defendant who was properly served. "[T]he fact of service is the important thing in determining jurisdiction and.... 'proof of service may be defective or even lacking, but if the fact of service is established jurisdiction cannot be questioned.'"

*Id.* 700 A.2d at 917–18 (citations omitted).

■ In the record before me, there is no evidence that service was effected.[14] While the record contains the Bank's motion for leave to serve its foreclosure complaint by ordinary mail and the State Court's Order granting such request, it does not contain a return of service required by Pa.R.C.P. 405 establishing that service by mail was made or any other evidence establishing "the fact of service." Absent such evidence, I cannot

conclude that the State Court had personal jurisdiction over Debtor in the foreclosure action. *See Azzarrelli v. City of Scranton,* 655 A.2d 648, 651 (Pa.Cmwlth.1995) (where plaintiff served writ of summons upon defendant by local constable rather than by sheriff as required by Pa.R.C.P. 400(a) and no return of service was ever filed as required by Pa.R.C .P. 405, "service was defective and the trial court was without jurisdiction over [the defendant]."). And absent personal jurisdiction, the Debtor is entitled to collaterally attack the Judgment in this Court.

### (b) *Subject Matter Jurisdiction*

■ Debtor also contends that the State Court lacked subject matter jurisdiction in the foreclosure action because the Bank failed to send Luis a notice of foreclosure as required by § 403 of Act 6, 41 P.S. § 101 *et seq..*[15] This section states, in pertinent part:

> Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including any mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

41 P.S. § 403(a). Debtor's contention raises two issues: (i) whether proper notice under § 403 is a prerequisite to a court's subject matter jurisdiction in a foreclosure action; and if so, (ii) whether § 403 required the Bank to provide *Luis* with a notice of foreclosure prior to instituting its foreclosure action against the *Debtor.* Significantly, in deciding these issues, I am not permitted to impose

---

14. In its brief, the Bank points out that "[t]here is no allegation in the complaint that its foreclosure judgment was obtained by collusion or fraud, nor is there any allegation that the Court of Common Pleas lacked jurisdiction over Mrs. Soto." However, because res judicata is an affirmative defense, *see* F.R.C.P., and it may be waived, *see In re Fine Paper Litigation,* 632 F.2d 1081, 1090 (3d Cir.1980), it was not incumbent upon the Debtor to anticipate the defense in her Complaint.

15. Debtor also contends that the foreclosure notice which the Bank attached to the foreclosure complaint is deficient in that it: (i) misrepresents her obligation; (ii) provides no local address to which she could tender payment; and (iii) contains incorrect statements and threats of actions which the Bank could not take. However, based on my conclusion that the Bank's failure to provide Luis with notice of its intention to foreclose deprived the State Court of subject matter jurisdiction over this matter, I need not reach this issue.

my view of how these issues should be resolved but must predict how the Pennsylvania Supreme Court would rule on them.[16] *Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476, 486 (3d Cir.1997). If the Pennsylvania Supreme Court has not provided guidance on the issues, I am required to " 'consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule.' " *2–J Corporation v. Tice,* 126 F.3d 539, 541 (3d Cir. 1997) (*quoting Gares v. Willingboro Township,* 90 F.3d 720, 725 (3d Cir.1996)).

■ The Pennsylvania Supreme Court has never directly addressed the first issue. However, in two decisions, the Pennsylvania Superior Court stated, *in dicta,* that in the absence of proper notice under Act 6, a court does not have subject matter jurisdiction over a foreclosure action.[17] *See Bankers Trust Company v. Foust,* 424 Pa.Super. 89, 92 n. 1, 621 A.2d 1054, 1056 n. 1 ("Proper notice requirements pursuant to Act 6 are a prerequisite to the court's subject matter jurisdiction over the mortgagee's foreclosure action."), *appeal denied,* 535 Pa. 635, 631 A.2d 1007 (1993);[18] *Philadelphia Housing Authority v. Barbour,* 405 Pa.Super. 140, 143–44, 592 A.2d 47, 48 (1991) ("The trial court.... correctly held that the notice requirements pertaining to foreclosure proceedings are jurisdictional, and, where applicable, a failure to comply therewith deprive a court of jurisdiction to act."), *aff'd per curiam,* 532 Pa. 212, 615 A.2d 339 (1992).[19]

16. As noted above, Pennsylvania state law applies because under the Full Faith and Credit statute, I am required to give the Judgment the same full faith and credit that it would have under that state's law. *See supra* note 7.

17. As the Bank noted at the hearing, as a general rule the term "subject matter jurisdiction" refers to a court's competency to decide controversies of the general class to which the case before it belongs, *i.e.,* foreclosure actions. *See Pennsylvania State Troopers' Association v. Pennsylvania Labor Relations Board,* 671 A.2d 1183, 1187 (Pa. Cmwlth.1996), *appeal denied,* 545 Pa. 657, 680 A.2d 1164 (1996); *Flynn v. Casa Di Bertacchi Corp.,* 449 Pa.Super. 606, 674 A.2d 1099, 1105 (1996). *See also* Black's Law Dictionary 1425 (6th ed.1990) (the term subject matter jurisdiction refers to "court's power to hear and determine cases of the general class or category to which proceedings in question belong; the power to deal with the general subject involved in the action"). Section 931 of Pennsylvania's Judicial Code, which delineates the proceedings over which the court of common pleas has original jurisdiction, states, in pertinent part:

Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

42 Pa.C.S. § 931. Since, to my knowledge, there is no statute or general rule that vests original jurisdiction over foreclosure actions (unless such action involves the Commonwealth government) in a court of Pennsylvania other than the court of common pleas, under a strict interpretation of the term "subject matter jurisdiction," it would seem that, regardless of whether notice was given under Act 6, the State Court had subject matter jurisdiction over the foreclosure action. However, in *Foust* and *Barbour,* the Superior Court apparently applied a broader definition of the term. Other state courts have done the same. *See e.g., Fairmount Heights Associates, L.P. v. Phiffer,* 1997 WL 630005, at *1 (Conn.Super.Ct. Sept.24, 1997) (reasoning that a proper notice to quit is a "jurisdictional necessity" in a summary process action involving residential property); *Housing Authority v. Terry,* 114 Wash.2d 558, 789 P.2d 745 (1990) (en banc) (court does not have subject matter jurisdiction over unlawful detainer action under Landlord and Tenant Act unless statutory provision requiring notice of ten day opportunity to comply with lease has been satisfied).

18. The following three issues were decided in *Foust:*

1. Whether Act 6 notice which conforms with the notice prescribed by the Secretary of Banking properly complies with the requirements of section 403?
2. Whether section 403 requires a mortgagee to provide all necessary formulas, to enable a debtor to calculate interest, fees and other charges that accrue from the date of default up to the date of curing the default, in the Act 6 notice?
3. Whether section 403 requires a mortgagee to include in the Act 6 notice that there is an absolute right to have a buyer assume the mortgage?

424 Pa.Super. at 92, 621 A.2d at 1056. Based on its answers to these issues, the Superior Court held that the trial court's determination that the Act 6 notice in the case was deficient was erroneous.

19. The issue on appeal in *Barbour* was "whether a 'Homebuyers Ownership Opportunity Agreement' under the federal Turnkey III housing pro-

Moreover, in *Marra v. Stocker*, 532 Pa. 187, 615 A.2d 326 (1992), the Supreme Court of Pennsylvania implicitly applied the principle that proper notice is jurisdictional.[20] In this case, the mortgagors became delinquent on their mortgage payments to the bank; when this occurred, the bank mailed them a notice of intention to foreclose under Act 6. However, in addition to being delinquent on their mortgage, the mortgagors were also delinquent on paying their taxes. At a tax upset sale, the Marras purchased the property. *Id.* at 189, 615 A.2d at 326–27. Although the property was duly deeded to the Marras by the tax claim bureau and the deed was recorded in the county deed book, during the intervening time between the tax upset sale and the recording of the deed, the bank filed a mortgage foreclosure action against the mortgagors. The Marras, who were not named in the complaint, notified the Bank of their ownership of the property. *Id.* at 190, 615 A.2d at 327. Thereafter, the Bank filed and served a second foreclosure complaint naming both the mortgagors and the Marras as plaintiffs. *Id.* at 190–91, 615 A.2d at 327–28. Significantly, the second complaint was not preceded with an Act 6 notice of intention to foreclose to the mortgagors or the Marras. When neither the mortgagors nor the Marras answered the complaint or appeared in the action, a default judgment was entered resulting in a court ordered sheriff sale of the property. While Mr. Marra appeared at the sheriff sale, he did not bid on the property. *Id.* at 190, 615 A.2d at 327. Five months after the sale, the Marras filed a petition to set aside the sheriff sale alleging that the sale was null and void because they did not receive a notice of intention to foreclose under Act 6.[21] *Id.* at 191, 615 A.2d at 328. The Supreme Court agreed with the Marras that compliance with the notice requirements of Act 6 was necessary and that the sheriff's sale should be set aside because the notice requirements were not met.[22]

■ Thus, even though the Marras were served with the foreclosure complaint, elected not to appear in the foreclosure action, were present at the sheriff sale and waited until five months after the sale to file their petition to have it set aside, the Pennsylvania Supreme Court still concluded that, in the absence of Act 6 notice, the Marras were entitled to have the sheriff's sale set aside. Given the facts and ruling in *Marra*, it seems likely that the Supreme Court of Pennsylvania would hold that Act 6 notice is jurisdictional. Accordingly, based on *Marra* and the intermediate appellate court's statements in *Foust* and *Barbour*, I predict that Pennsylvania's highest court would rule that absent proper notice under Act 6, the State Court did not have subject matter jurisdiction over the Bank's foreclosure action. *Accord Main Line Federal Savings and Loan Association v. Joyce*, 632 F.Supp. 9 (E.D.Pa.1986) (in mortgage foreclosure proceeding removed from state court, district court granted motion to dismiss based on rationale that notice

---

gram is a lease (with an option to buy) or a long term sales agreement." 405 Pa.Super. at 141–42, 592 A.2d at 47. The Superior Court held that the agreement was a lease with an option to purchase and, therefore, that the plaintiff's action was governed by the Landlord Tenant Act of 1951 and properly brought in the Municipal Court of Philadelphia. *Id.* at 149, 592 A.2d at 51.

20. *Marra* was decided after the Superior Court issued its decision in *Barbour* and the Supreme Court affirmed it.

21. Since the Marras were successor record owners of the subject property and they notified the bank of their ownership interest therein, they were residential mortgage owners entitled to Act 6 notice. *Id.* at 192, 615 A.2d at 328. *See also* 41 P.S. § 101 (residential mortgage debtors includes "a successor record owner of the property

... who gives notice thereof to the residential mortgage lender").

22. Similarly, in *Sharp v. Fidelity Bond and Mortgage Co. (In re Sharp)*, 24 B.R. 817 (Bankr. E.D.Pa.1982), the Bankruptcy Court set aside a sheriff's sale for failure to comply with Act 6's notice requirements. In this case, the mortgagee obtained a default judgment in state court against the debtors in a mortgage foreclosure action. Before the debtors filed for bankruptcy and unbeknownst to them, their property was sold at a sheriff's sale and deeded to a third party. Upon filing for bankruptcy and realizing that their property had been sold, the debtors filed a complaint in the bankruptcy court seeking to set aside the sheriff's sale. The bankruptcy court granted the requested relief based on its finding that the mortgagee failed to prove that it had complied with the notice requirements of Act 6. *Id.* at 819–821.

under § 403 is a prerequisite to subject matter jurisdiction over a foreclosure action under Pennsylvania law);[23] *In re Schwartz, supra,* 68 B.R. 376, 378 (Bankr.E.D.Pa.1986) (citing principle that Act 6's notice requirements are mandatory and noting that in numerous cases, Pennsylvania courts have granted motions to dismiss complaints for failure to comply with 41 P.S. § 403 and stricken default judgments where the lender did not send an adequate 30 day notice prior to suit).

Given my recognition that proper notice under Act is jurisdictional, I must determine whether there was a deficiency in the notice provided by the Bank. Specifically, did § 403 require the Bank to provide Luis with a notice of intention to foreclose before instituting its foreclosure action against Debtor's real estate. The answer to this issue depends on the definition of "residential mortgage debtor." This phrase is defined in Act 6, in relevant part, as "a non-corporate borrower who is obligated to a residential mortgage lender to repay in whole or in part a residential mortgage...." 41 P.S. § 101.[24] The wording of this definition is rather awkward,[25] and my research revealed no cases in which the definition was applied to a situation as presented here where the borrower who is personally obligated to repay the residential mortgage lender and the mortgagor are separate individuals. However, taking a narrow view of the language and applying common sense, I conclude that Luis fits within the definition of "residential mortgage debtor."

The first part of the definition of "residential mortgage debtor" is easily satisfied. Luis is a non-corporate borrower and the Bank is a "residential mortgage lender."[26] The more difficult aspect of the definition is whether Luis is obligated to repay a "residential mortgage."

Under the Act, "residential mortgage" is defined, in relevant part, as "an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less, evidenced by a security document and secured by a lien upon real

**23.** One year before Judge Lord issued his decision in *Main Line Federal Savings and Loan Association v. Joyce, supra,* he decided *Werts v. Federal National Mortgage Association,* 48 B.R. 980 (1985) In this earlier case, the lender obtained a prepetition foreclosure judgment against the debtor. When the debtor filed for bankruptcy, the lender filed a proof of claim to which the debtor objected. One of the objections raised by the debtor was that the lender's claim should be reduced by the amount of attorney's fees and costs which the lender claimed was due to it as a result of the foreclosure action since the lender's notice of foreclosure was deficient under Act 6. While Judge Lord agreed with the debtor that the lender's foreclosure notice was deficient, he refused to reduce the fees and costs. In so holding, Judge Lord reasoned as follows:

> Since the judgment of foreclosure stands unmolested, defendant's claim for attorney's fees is enforceable. What plaintiff really should object to is the judgment of foreclosure itself. Plaintiff's proper and obvious remedy was to raise his objections to the notice at the foreclosure proceeding and to seek to have the complaint in foreclosure dismissed. Unfortunately, plaintiff failed to do so, and I have no authority to mitigate the consequences of his failure by allowing him to recoup defendant's attorney's fees and costs in this proceeding.

*Id.* at 985. While Judge Lord's decisions could be construed as inconsistent, the debtor in *Werts* did not object to the court's subject matter jurisdiction whereas the debtor in *Main Line Federal Savings Association* did.

**24.** As noted above, *see supra* note 21, the definition of residential mortgage debtor also includes "a successor record owner of property, if any, who gives notice thereof to the residential mortgage lender," 41 P.S. § 101, but this part of the definition is irrelevant to this matter.

**25.** Even as applied to the more typical situation in which the borrower and the mortgagor are the same person, the definition is still awkward. When the borrower and the mortgagor are the same person, the terms of the borrower's repayment obligations are generally set forth in a note with the mortgage securing the borrower's performance under the note. *See e.g., United States v. Jones–Williams,* 870 F.Supp. 90, 91 (M.D.Pa. 1994) ("The loan was evidenced by a promissory note and secured by a mortgage."); *In re Schwartz,* 68 B.R. 376, 382 (Bankr.E.D.Pa.1986) ("In Pennsylvania a mortgage is a pledge of interest in real property as security for payment of an indebtedness, usually created by a note or bond."). Accordingly, it seems inaccurate to define a "residential mortgage debtor" as a borrower who is "obligated *to repay ... a mortgage.*"

**26.** Act 6 defines the term "residential mortgage lender" as "any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt." *Id.*

property located within this Commonwealth ... [,]" *id.* Since Luis is obligated to repay the Bank for his loan, the principal amount of which was considerably less than fifty thousand dollars and his obligation is secured by a lien on Debtor's house, the only remaining question is whether his obligation to the Bank is "evidenced by a security document."

The Act defines the term "security document" as "a mortgage, deed of trust, real estate sales contract or other document creating upon recordation a lien upon real estate." Obviously, the Mortgage is a security document. However, the Act does not define the phrase "evidenced by." My research failed to uncover any Pennsylvania case law construing the phrase in this context. Accordingly, I will turn to the dictionary for assistance. *See Bankers Trust Company v. Foust, supra,* 424 Pa.Super. at 95, 621 A.2d at 1057 (applying principle that words of a statute must be construed according to their common and accepted usage in construing 41 P.S. § 403).

The verb "evidence" is defined as follows: "to offer evidence of." Mirriam–Webster's Collegiate Dictionary at 402 (10th ed.1995). The noun "evidence, is defined in relevant part, as: 'a: an outward sign: *indication* b: something that furnishes proof; Testimony; *specif:* something legally submitted to a tribunal to ascertain the truth of a matter[.]' " *Id.*

Although the Mortgage does not identify the terms of Luis' obligation to the Bank, it makes specific reference to the obligation, stating:

> LOAN: This Mortgage will secure the repayment of a loan or loans made to Luis A. Maldonado (the "Borrower") in the principal amount of $16,036.91 Dollars, plus interest and costs thereon, as provided in the promissory note or notes dated on or about July 29, 1991 and any renewal, substitution, refinancing or extension of the loan or loans (the "Note") and the performance of all promises contained in the Note, and other documents executed in connection with the Note.

By referencing Luis' obligation, I conclude that the Mortgage provides "evidence of" Luis' obligation and, accordingly, that Luis

fits within the definition of "residential mortgage debtor" under Act 6.

This conclusion is supported by a common sense reading of the Act. In some provisions of the Act, the term "residential mortgage debtor" would not make sense unless it applied to Luis. For example, the definition of "finance charge" states, in pertinent part: "The finance charges plus the actual settlement costs charged by the residential mortgage lender shall include all charges made by the residential mortgage lender to the residential mortgage debtor other than the principal of the loan." 41 P.S. § 101. Since the Bank did not make any charges to the Debtor, but rather made all charges to Luis who borrowed the loan, this definition would be rendered nonsensical unless the definition of "residential mortgage debtor" included Luis. The same logic applies to the definition of "loan yield" which states, in relevant part: " 'Loan yield' means the annual rate of return obtained by a residential mortgage lender from a residential mortgage debtor over the term of the loan and shall be determined in accordance with regulations issued by the Secretary of Banking." *Id.*

Furthermore, the conclusion that Luis is also a "residential mortgage debtor" is consistent with the purpose of the notice provisions of Act 6 which is to "offer[ ] homeowners with 'residential mortgages' a measure of protection from overly zealous 'residential mortgage lenders.' " *Beckett v. Laux, supra,* 395 Pa.Super. at 567, 577 A.2d at 1343 (*citing Continental Bank v. Rapp,* 336 Pa.Super. 160, 169, 485 A.2d 480, 485 (1984)). *See also Bankers Trust Company v. Foust,* 424 Pa.Super. 89, 92, 621 A.2d 1054, 1056 (1993) (same), *allocatur denied,* 535 Pa. 635, 631 A.2d 1007 (1993). *See also Bennett v. Seave,* 520 Pa. 431, 442, 554 A.2d 886, 891 (1989) ("The comprehensive statutory scheme [of Act 6] demonstrates an extensive program designed to avoid mortgage foreclosures."). Under the terms of the Mortgage, Luis' failure to perform any of the promises contained in the Note constitutes an event of default under the Mortgage. When an event of default occurs, the Bank has the right under the Mortgage to declare the

entire balance of the Note to be due and payable and foreclose on the Mortgage.[27] Thus, unless Luis is considered a residential mortgage debtor under the Act, the Bank would be able to, as it did, accelerate the amount due under the Note and foreclose on the Mortgage without any notice to him. Yet, in situations like this, where the borrower and mortgagor are separate individuals, it is quite likely that the borrower possesses information regarding his relationship with the residential mortgage lender and his repayment history on the loan that is unknown to the mortgagor. Without such information, the mortgagor may be handicapped in negotiating with the mortgage lender, curing the default that occurred in the mortgage document and defending against the mortgage foreclosure action to save her home. By requiring the mortgage lender to notify the borrower of its intent to foreclose on the mortgage, it insures that the borrower will be aware of the lender's intent to take such action. The borrower will then be on notice of the threat posed to the mortgagor's home and cognizant of the mortgagor's potential need for information regarding the loan. Since Act 6 is designed to protect homeowners, I find it consistent with the purpose of the Act to put the burden of notifying the borrower on the residential mortgage lender instead of the mortgagor.

 I therefore conclude that Luis is a "residential mortgage debtor" under Act 6 and, as such, that the Bank was required to provide him with notice under § 403 prior to instituting its foreclosure action against the Debtor. There is no evidence in the record that this requirement was satisfied. While the Bank alleged in its Complaint in the foreclosure action that it sent Debtor a notice of intention to foreclose, there is no similar allegation as to Luis. Absent evidence that the notice requirement was met, I cannot conclude that the State Court had subject matter jurisdiction over the foreclosure action. For this additional reason, the Bank has not proven that the Judgment is res judicata to the Debtor's claims.

### (c) Application of Doctrine Would Not Bar All Claims

 Even assuming that the State Court possessed personal and subject matter jurisdiction in the State Court foreclosure action, the doctrine of *res judicata* would not bar all of the Debtor's claims. The doctrine "holds that 'a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action.' " *Coover v. Saucon Valley School District*, 955 F.Supp. 392, 411 (E.D.Pa.1997) (*quoting Keystone Bldg. Corp. v.* 468 Pa. 85, 91, 360 A.2d 191, 194 (1976)). *Res judicata* applies not only to matters which were actually litigated, but also to matters which should have been litigated at the first proceeding if they were part of the same cause of action. *C.D.G., Inc. v. Workers' Compensation Appeal Board*, 702 A.2d 873, 876 n. 5 (Pa.Cmwlth. 1997). In order for *res judicata* to apply, a concurrence of four conditions must be shown: 1) identity of persons and parties to the action; 2) identity of the thing sued upon or for; 3) identity of causes of action; and 4) identity of the quality or capacity of the parties suing or being sued. *Rawlings v. Bucks County Water and Sewer Authority*, 702 A.2d 583, 585 (Pa.Cmwlth.1997).

 The claims in Counts I and II, and at least the damage claim in Count IV, could not have been raised in the State Court action.[28] In Count I, Debtor objects to the

---

27. The Mortgage states:

> DEFAULT: You will be in default under the terms of this Mortgage if any one or more of the following occurs: (a) you fail to perform one of your promises in this Mortgage....; (b) the Borrower does not make a payment to the Bank when due in the Note; or (c) the Borrower fails to perform any promise in the Note[.]

> Upon the occurrence of an event of default, Bank may: (i) take legal action to foreclose on the Premises, subject to our right to cure, if any; (ii) declare the entire balance of the Note, with accrued interest and costs thereon, to be immediately payable;....

28. Because I dispose of Debtor's claim in Count III on the merits, *see infra* at 358, I do not discuss it here.

Bank's Proof of Claim on the grounds that it does not contain an itemization as required by Rule 3001.1 of the Local Bankruptcy Rules. This rule would have had no application until Debtor filed for bankruptcy. In Count II, Debtor contends that the Mortgage merged into the Judgment and, consequently, that from the date of the Judgment, the Bank is only entitled to interest at the rate of 6% "on the declining unpaid judgment balance." Complaint ¶¶ 24–25. Since this claim arises out of the entry of the Judgment, it could not have been raised in the State Court action. Lastly, in Count IV, Debtor asserts violations of the TILA, contending they entitle her, *inter alia*, to recoup $2,000.00 against the Bank's claim. Insofar as this request for monetary damages by way of recoupment, the Bank admits that this claim could not have been raised in the foreclosure action.[29] *See* Bank's Motion at ¶ 8.

Because the claims in Counts I and II, and at least the damage claim in IV, could not have been raised in the foreclosure action, there is no identity between them and the foreclosure action decided in State Court. Therefore, the Judgment would not be *res judicata* as to them.

■ A different rationale applies to Count V. In this count, Debtor raises a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201–1 *et seq.* As relief, Debtor asks for a declaration that the Mortgage be

---

29. As alternative relief in Count IV, Debtor asks for rescission of the Mortgage. As to this claim for relief, the Bank does not admit that the claim could not have been raised in the state foreclosure action. Notably, the rationale used by the Pennsylvania Superior Court for concluding that claims for recoupment of damages under the TILA cannot be brought in a foreclosure action in Pennsylvania does not apply to claims for rescission. *See New York Guardian Mortgage Corp. v. Dietzel*, 362 Pa.Super. 426, 524 A.2d 951 (1987); *Fleet Real Estate Funding Corp. v. Smith*, 366 Pa.Super. 116, 126–27, 530 A.2d 919, 924–25 (1986).

In *New York Guardian Mortgage Corp. v. Dietzel, supra,* the court held that a defendant in a mortgage foreclosure action cannot assert as a counterclaim a set-off for damages under 15 U.S.C. § 1640 for a TILA violation. The court based its holding on following provisions of § 1640:

**(e) Jurisdiction of Courts; limitations on actions; State attorney general enforcement**

... This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action.... [.]

**(h) Offset from amount owed to creditor or assignee; rights of defaulting consumer**

A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) of this section against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this subchapter has been determined by judgment of a court of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter in an original action, or as a defense or counterclaim to an action to collect amounts owed by the consumer brought by the person liable under this subchapter.

15 U.S.C. § 1640(e) & (f). The court reasoned that these provisions "make it clear that a person can assert a claim under the Act only in an action for a money judgment either as a counterclaim to an action to collect money owed by the consumer, or in an original claim brought by the consumer," and that a judgment in a mortgage foreclosure proceeding, not being a judgment for damages, does not satisfy this requirement. 362 Pa.Super. at 429–30, 524 A.2d at 952–53.

Applying the same rationale, the Pennsylvania Superior Court in *Fleet Real Estate Funding Corp. v. Smith, supra,* held that a defendant in a mortgage foreclosure action is barred from raising a recoupment defense for monetary damages under the TILA. *But see Dangler v. Central Mortgage Company (In re Dangler),* 75 B.R. 931, 935–36 (Bankr.E.D.Pa.1987) (rejecting notion that recoupment claim damages cannot be asserted as a counterclaim in a mortgage foreclosure action under Pennsylvania law).

The rationale in these state cases is based on the particular language quoted above from § 1640. Such language is not applicable to claims for rescission under the TILA which are governed by 15 U.S.C. § 1635. Accordingly, the rationale for holding that claims for damages under § 1640 cannot be raised in a foreclosure action does not apply to claims for rescission. To the extent Debtor relies on *Apaydin v. Citibank Federal Savings Bank (In re Apaydin),* 201 B.R. 716, 721 (Bankr.E.D.Pa.1996), for the proposition that her rescission claim would have been barred in the foreclosure action, I respectfully disagree. Since a judgment in Debtor's favor on the rescission claim would nullify the Bank's rights and interests as established by the Judgment, *see infra* at 357–358 (discussing Restatement (2d) of Judgments § 22 (1980)), she would be precluded from raising her rescission claim here if the State Court had subject matter and personal jurisdiction in the foreclosure action.

declared void or for a judgment equal to three times her actual damages. The UTPCPL permits private causes of action as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.

73 P.S. § 201–9.2. As this section reveals, the only remedy available to private litigants under the UTPCPL are monetary damages. Because of this, even if the Debtor succeeded on her UTPCPL claim, she would not be entitled to have the Mortgage declared void; rather, her relief would be limited to monetary damages.

■ Since Debtor's UTPCPL claim arises from the same transaction (*i.e.,* the mortgage) from which the Bank's mortgage foreclosure action arose, she could have raised the claim as a counterclaim in State Court. However, in Pennsylvania, there is no compulsory counterclaim rule which means that Debtor was not required to raise the claim in that action. In determining whether *res judicata* applies in such situations, the Pennsylvania courts turn to Restatement (2d) of Judgments § 22 (1980) which states:

> (1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subse-

quently maintaining an action on that claim, except as stated in Subsection (2).

> (2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded after rendition of the judgment in that action, from maintaining an action on the claim if:

>> (a) The counterclaim is required to be interposed by a compulsory counterclaim, statute or rule of court, or

>> (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

*See Del Turco v. Peoples Home Savings Association,* 329 Pa.Super. 258, 478 A.2d 456 (1984) (applying Restatement (2d) Judgments § 58).[30] Since Debtor's UTPCPL claim seeks affirmative relief in the form of a judgment,[31] a judgment in her favor on such claim would not "nullify or substantially impair" any rights or interests established by the Judgment. The Judgment would continue to stand on its own just as the judgment on Debtor's UTPCPL claim would. Therefore, *res judicata* is inapplicable to the UTPCPL claim.

## IV. Arguments on Individual Claims

### (a) *Count II*

■ The Bank argues that Count II must be dismissed because the Debtor's contention that the Mortgage merged with the Judgment lacks merit. *See* Motion ¶ 5. This argument is frivolous. In *Stendardo v. Federal National Mortgage Association (In re Stendardo),* 991 F.2d 1089 (3d Cir.1993), the Third Circuit specifically held that when a mortgagee obtains a judgment in foreclosure on a mortgage, the terms of the *mortgage* merge into the foreclosure judgment and

---

**30.** In *Del Turco v. Peoples Home Savings Association, supra,* the mortgagee obtained a foreclosure judgment against the plaintiffs who thereafter filed suit against the mortgagee raising "a restitutionary theory of recovery that, in essence, challenges the amount of debt paid [the mortgagee] in the mortgage foreclosure action." 329 Pa.Super. at 272, 478 A.2d at 463. The court applied the above-mentioned Restatement sec-

tion to conclude that the plaintiff's claims were properly dismissed.

**31.** If Debtor was entitled under the UTPCPL to have the Mortgage declared void, a judgment in her favor on the claim would nullify the Judgment and impair the rights established in the State Court action. Accordingly, her claim would be barred by *res judicata.*

thereafter "no longer provide a basis for determining the obligations of the parties." *Id.* at 1095. The Third Circuit used the issue of post-judgment interest to illustrate this principle, stating:

> For example, bankruptcy courts have consistently held that the doctrine of merger under Pennsylvania law entitles a mortgagee post-judgment to the legal rate of interest rather than the interest specified in the mortgage. Because the mortgage merges into the judgment, its terms specifying the contractual interest rate no longer exist to bind the parties.

991 F.2d at 1095 (citations omitted). In light of the Third Circuit's holding, the Bank's argument is rejected.[32]

### (b) *Count III*

 In Count III, Debtor anticipates an amendment to the Bank's Proof of Claim to include attorney's fees and costs and objects to their inclusion. As the Bank points out, this objection is premature. *See* Bank's Motion at ¶ 6. Until the Bank amends its Proof of Claim in this manner, there is no actual controversy between the parties concerning the Bank's entitlement to attorney's fees and costs. Any decision which I would render on Count III would be an advisory opinion which I am not permitted to give. *See Coffin v. Malvern Federal Savings Bank,* 90 F.3d 851, 853 (3d Cir.1996). Count III shall be dismissed.

### (c) *Count IV*

### (i) Statute of Limitations

The Bank contends that plaintiff's claim for damages in Count IV is barred by the one year statute of limitations applicable to affirmative actions to recover for TILA violations.[33] *See* 15 U.S.C. § 1640(e). I disagree.

---

**32.** In Count II, Debtor appears to assert, relying solely upon the merger doctrine, that the Bank is only entitled to interest at the rate of 6% from the time the Judgment was entered until it is paid in full based. However, this assertion ignores the requirement of 11 U.S.C. § 1325(a)(5)(B)(ii) ("with respect to each allowed secured claim provided for by the plan ... the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.").

**33.** The Bank limited its statute of limitations argument in its brief to Debtor's claim for damages under the TILA and did not argue that Debtor's claim for rescission was also time-barred. However, at the hearing, the Bank raised this additional argument. The Bank asserted that Debtor's rescission claim is barred by the time limitation contained in 15 U.S.C. § 1635(f) which states, in pertinent part: "An obligor's right of rescission shall expire three years after the date of consummation of the transaction...." 15 U.S.C. § 1635(f). The Debtor opposes this argument, contending that since she is asserting her right to rescission as a recoupment defense, the limitation in § 1635(f) does not apply. As support for her argument, Debtor cites to § 1635(i)(3) which states: "Nothing in this subsection affects a consumer's right of rescission in recoupment under state law." 15 U.S.C. § 1635(i)(3). Debtor contends that under Pennsylvania law, her rescission claim in recoupment is permitted even though the time limitation in § 1635(f), which she treats as a "statute of limitations," has expired.

The issue of whether a recoupment defense for rescission under the TILA may be raised beyond the three year time limit of § 1635(f) has been the subject of debate. *See e.g., Fidler v. Central Cooperative Bank (In re Fidler),* 210 B.R. 411, 418–420 (Bankr.D.Mass.1997) (statutory claim for rescission under TILA not barred by time three year time limitation); *Beach v. Great Western Bank,* 692 So.2d 146 (Fla.1997) (statutory right of rescission under TILA may not be revived as a defense in recoupment beyond three year expiration period of § 1635(f)). At the hearing, the Bank represented that the issue would be decided by the Supreme Court since it granted certiorari in *Beach v. Ocwen Federal Bank,* —— U.S. ——, 118 S.Ct. 294, 139 L.Ed.2d 226 (1997).

Recently, the Supreme Court issued its decision in *Beach. See Beach v. Ocwen Federal Bank,* —— U.S. ——, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). The Supreme Court concluded that, under federal law, the statutory right of rescission provided in § 1635(f) may not be revived as an affirmative defense after the expiration of the three year period set forth therein. The Supreme Court reasoned that § 1635(f) does not limit the time period within which suit must be brought but, rather, governs the life of the right to rescission created by § 1635. *Id.* 118 S.Ct. at 1411–13. However, in reaching its decision, the Supreme Court specifically noted that it was not deciding whether state law might permit a consumer to raise the right to rescission defensively outside of the three year bar pursuant to § 1635(i)(3), *id.* at 1412–13 & n. 6, which is the issue I am confronted with here. This issue has never been decided by any court in Pennsylvania or this district. With such an issue before me, it is helpful to have briefs from the parties addressing it. While Debtor focused on this issue in her supplementary brief, the Bank has never ad-

■ Plaintiff is not affirmatively seeking to recover monetary damages in Count IV. Rather, she is seeking to have the Bank's claim reduced by the amount of damages to which she is entitled. Her prayer for relief in Count IV states, in pertinent part:

> Wherefore, Plaintiff respectfully requests that this Court: assume jurisdiction over this case; declare that PNC Bank's mortgage is void and its claim is an allowed unsecured claim pursuant to TILA or **alternatively reduce Defendant's claim by $2,000 pursuant to TILA;** . . . .

Complaint, Count IV. Thus, Debtor is not asserting her claim for damages in Count IV as an affirmative action but as a recoupment defense in response to the Bank's Proof of Claim. See Woolaghan v. United Mortgage Services, Inc. (In re Woolaghan), 140 B.R. 377, 383–85 (Bankr.W.D.Pa.1992) (debtor was asserting TILA claim as a recoupment defense since the claim was being "asserted not as an independent cause of action, but instead as a response to [the mortgagee's] proof of claim in order to limit the extent of [the mortgagee's] recovery"); Dangler v. Central Mortgage Company (In re Dangler), 75 B.R. 931 (Bankr.E.D.Pa.1987) (claim in adversary proceeding seeking a reduction in amount of mortgagee's proof of claim for TILA violations constituted a recoupment defense). See also Fidler v. Central Cooperative Bank, supra, 210 B.R. at 420 (although TILA rescission claim was raised in adversary complaint, it was being raised defensively in response to mortgagee's proof of claim and, therefore, was being asserted as a recoupment defense). The one year statute of limitations applicable to affirmative actions under the TILA is not applicable to claims asserted as recoupment defenses. See 15 U.S.C. § 1640(e) (the one-year time limitation does not "bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment"). See also Woolaghan v. United Mortgage Services, Inc. (In re Woolaghan), supra, 140 B.R. at 383 ("If a TILA violation is raised as a recoupment defense. to as claim, . . . the 15 U.S.C. § 1640(e)[ ] time limitation does not apply."); Smith v. Kissell Company (In re Smith), 92 B.R. 127, 132 (Bankr.E.D.Pa.1988) ("[O]ne-year statute of limitations applicable to affirmative actions to recover for TILA damages [is not] . . . applicable to attempts to assert recoupment defenses against proofs of claim filed by creditors in a bankruptcy proceeding."), rev'd on other grounds, 98 B.R. 708 (E.D.Pa.1989). Therefore, the Debtor's damage claim in Count IV is not time-barred.

### (ii) Lender's Obligation to Provide Mortgagor With Disclosures Under the TILA

The Bank contends that because Debtor was merely the mortgagor in the subject transaction and did not apply for or receive

---

dressed it. As noted above, the Bank was operating under the assumption that the Supreme Court decision would control whether Debtor's rescission claim is time-barred. Since that assumption proved false and the instant case is only in the early stages of litigation, I will defer ruling on the issue to provide the Bank with the opportunity, should it choose to exercise it, to raise the issue again and file a brief addressing it with Debtor having the opportunity to respond thereto. Should the Bank elect to press the issue, this procedure will enable the Debtor (and the Bank) to address whether the Supreme Court's ruling in Beach that the three year period in § 1635(f) is not a statute of limitations but the time period after which the right to rescission is extinguished affects her right to rescission in recoupment under Pennsylvania law. Since Beach was just recently decided, Debtor's supplementary brief did not focus on this issue. Moreover, some of the cases upon which Debtor relied in her supplementary brief to support her view

that the right to rescission can be raised in recoupment were premised upon the assumption that the time period in § 1635(f) was only a limitations on the period in which the right to rescission could be exercised. See Dawe v. Merchants Mortgage and Trust Corp., 683 P.2d 796, 799 n. 5 (Colo.1984) ("Implicit in our ruling here that petitioner's demand for rescission is not barred by the relevant statute of limitations is our view that Congress did not intend in section 1635(f) to limit to three years the existence of the substantive right to rescind which the Supreme Court decided is not the case."); see also Shaw v. Federal Mortgage & Investment Corp. (In re Shaw), 178 B.R. 380, 386–387 (Bankr.D.N.J. 1994) (relying upon Dawe and Federal Deposit Insurance Corporation v. Ablin, 177 Ill.App.3d 390, 126 Ill.Dec. 694, 532 N.E.2d 379 (1988)); Federal Deposit Insurance Corporation v. Ablin, supra (relying upon Dawe). The Supreme Court's decision in Beach proves this assumption wrong.

credit, she was not entitled under the TILA to disclosures as to the amount financed, the finance rate and finance charges. The Bank bases this contention on 15 U.S.C. § 1631(a), which states that "a creditor . . . shall disclose to the person who is obligated on a. . . . consumer credit transaction the information required under this subsection[,]" and the following language in the Official Staff Commentary on Regulation Z:

2(a)(11) Consumer

1. Scope. Guarantors, endorsers, and sureties are not generally consumers for purpose of the regulation, but they may be entitled to rescind under certain circumstances and they may have certain rights if they are obligated on credit card plans.

2. Rescission rules. For purposes of rescission under §§ 226.15 and 226.23, a consumer includes any natural person whose ownership interest in his or her principal dwelling is subject to the risk of loss. Thus, if a security interest is taken in A's ownership interest in a house and that house is A's principal dwelling, A is a consumer for purposes of rescission, even if A is not liable, either primarily or secondarily, on the underlying transaction.

Official Staff Commentary on Regulation Z, 12 C.F.R. Pt. 226, Supp. I, § 226.2(a)(11)(1) & (2).

 I am unpersuaded by this argument. Under the language of Regulation Z, Debtor is a "consumer" with the right to rescind and, as such, she was entitled to receive not only two copies of the notice to rescind but other material disclosures as well.

The Board of Governors of the Federal Reserve promulgated Regulation Z in accordance with the authority conferred upon it under the TILA. *See* 15 U.S.C. § 1604 (au-

thorizing the Board of Governors to prescribe regulations to carry out the purposes of the TILA); 12 C.F.R. § 226.1(a) (recognizing that Regulation Z was issued by the Board of Governors to implement the TILA). One of the stated purposes of the regulation is to "give [ ] consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling[.]" 12 C.F.R. § 226.1(a). "Consumer" as defined in the regulation means:

a cardholder or a natural person to whom consumer credit is offered or extended. However, for purposes of rescission under § . . . 226.23, the term also includes a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest.

12 C.F.R. § 226.2(a)(11). Because the Debtor granted the Bank a mortgage on her home, she is a "consumer" for purposes of rescission under § 226.23. While I will discuss this section, it makes sense to first turn to § 226.17(d).

Section 226.17(d) explains who must be given disclosures when a transaction involves multiple consumers.[34] In transactions not involving the right to rescind, the section authorizes a creditor to make the required disclosures to "any consumer who is primary liable on the obligation." However, if the transaction involves the right to rescind under § 226.23, the disclosures must be made "to each consumer who has the right to rescind." 12 C.F.R. § 226.17(d). Therefore, based on § 226.17(d), if the Debtor had the right to rescind under § 226.23, the Bank was required to make disclosures to her.[35]

---

**34.** Section 226.17(d) states, in pertinent part:

If there is more than one consumer, the disclosures may be made to any consumer who is primarily liable on the obligation. *If the transaction is rescindable under § 226.23, however, the disclosures shall be made to each consumer who has the right to rescind.*
12 C.F.R. § 226.17(d) (1991) (emphasis added).

**35.** The Official Staff Commentary to § 226.17(d) lends further support to the conclusion that if the Debtor fits within the category of consumers with the right to rescind under § 226.23, the

Bank was required to give disclosures to her. This section states:

Multiple Consumers. When two consumers are joint obligors with primarily liability on an obligation, the disclosures shall be given to either of them. If one consumer is merely a surety or guarantor, the disclosures must be given to the principal debtor. In rescindable transactions, however, separate disclosures must be given to each consumer who has the right to rescind under § 226.23[.]
Official Staff Commentary to Regulation Z, Pt. 226, Supp. 1, § 226.17(d).

Subsection (a) of § 226.23 identifies those consumers who have the right to rescind:

(a) *Consumer's right to rescind.* (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction[.]

12 C.F.R. § 226.23(a). Since Debtor granted the Bank a mortgage on her home, she is a consumer having the right to rescind. As such, the Bank was required to make disclosures to her. The extent of these disclosures is revealed in § 226.23(a)(3). This subsection, which establishes the time frame in which the right to rescission must be exercised, states as follows:

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, *delivery of the notice required by paragraph (b) of this section or delivery of all material disclosures,* whichever occurs last.

\* \* \* \* \* \*

(b)(1) *Notice of right to rescind.* In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose.....[.]

12 C.F.R. § 226.23(a)(3) & (a)(4), (b)(1). The significance of the time frame set forth in subsection(a)(3) is that it presupposes that consumers are entitled to delivery of: (i) the notice to rescind; and (ii) all material disclosures. In a footnote accompanying § 226.23(a)(3), the term "material disclosures" is defined:

The term "material disclosures" means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in § 226.32(c) and (d).

12 C.F.R. § 226.23(a)(3) n. 48. Based on this definition, the Bank was required to provide Debtor with disclosures of the annual percentage rate, finance charge and amount financed. The Bank's argument to the contrary is rejected.[36]

## V. CONCLUSION

The Bank's Motion will be granted in part. Count III of the Complaint will be dismissed. The Motion is denied as to all other counts.

---

**36.** At the hearing, the Bank raised another argument, namely that even if Debtor was entitled to disclosures as to the amount financed, the finance rate and finance charges, she was entitled to such disclosures for purposes of rescission only and is not entitled to damages based upon its alleged failure to provide them. I am unpersuaded by this new argument. As Debtor noted in her supplemental brief, the TILA section creating private actions for damages provides, in relevant part, that "any creditor who fails to comply with *any requirement imposed under this part,* including any requirement under section 1635 of this title.... with respect to any person is liable to such person in an amount equal to....." 15

U.S.C. § 1640(a). Since the Bank's obligation to provide Debtor with the aforementioned disclosures is imposed under the TILA, its failure to comply with that requirement, if proven, renders it liable to Debtor for damages under the language of § 1640(a). *See also* 15 U.S.C. § 1635(g) ("In any action in which it is determined that a creditor has violated this section [pertaining to the right of rescission], in addition to rescission the court may award relief under section 1640 of this title *for violations of this subchapter not relating to the right to rescind.*"); Official Staff Commentary on Regulation Z, 12 C.F.R. Pt. 226, Supp. I, § 226.23(a)(3) (failure to give material disclosures may result in civil liability).